ATTORNEY FOR APPELLANT
Joseph Leon Payne
Austin, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

ARTURO RODRIGUEZ II
Deputy Attorney General
Indianapolis, Indiana

**FILED**
Apr 17 2009, 2:22 pm

*Kevin S. Smith*
**CLERK**
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 03S04-0904-CR-166

ERIC D. BANNISTER,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellees (Plaintiff below).*

Appeal from the Bartholomew Superior Court, No. 03D02-0701-FC-91
The Honorable Roderick D. McGillivray, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 03A04-0712-CR-749

**April 17, 2009**

**Shepard, Chief Justice.**

A police officer on patrol ran a computer check on the license plate of a car that crossed his view at an intersection, and learned that the owner's driving license was suspended. The computer check also provided a physical description of the owner, and the officer later testified that this description approximated the characteristics of the driver whom he saw pass his view. The trial court held that the facts available constituted reasonable suspicion to warrant an investigatory stop under the Fourth Amendment. We affirm.

**Facts and Procedural History**

On January 3, 2007, at about 10:30 p.m., Officer James Myers of the Columbus Police Department was parked in his squad car, headlights on, facing east on Spear Street at State Road 11 in Bartholomew County. (Appellant's App. at 12-13.) A gray Chevrolet S-10 pickup truck passed in front of him, driving northbound on State Road 11. (Appellant's App. at 13.) Officer Myers then followed the truck and conducted a license plate check; the computer revealed that Eric D. Bannister was the registered owner, and that Bannister's driver's license was suspended for life because he was a habitual traffic offender. (Appellant's App. at 13.) The computer also revealed that Bannister was described as a male, around 5 foot 7, 165 pounds with brown hair. (Appellant's App. at 20; Tr. at 40.)

Based on this information and Officer Myers' view of the driver as he passed, Officer Myers proceeded to stop the vehicle to determine whether the driver was Bannister. (Appellant's App. at 11.) The driver presented an Indiana identification card, which revealed that he was in fact Bannister. (Tr. at 48.) Bannister then informed Officer Myers that his driver's license was suspended, and Officer Myers placed Bannister under arrest. (Tr. at 52.)

The State charged Bannister with operating a motor vehicle after his driver's license was suspended for life, a class C felony under Ind. Code § 9-30-10-17 (2004). Bannister filed a motion to suppress the evidence, asserting that his vehicle was stopped without probable cause or reasonable suspicion. The trial court conducted a hearing on the motion and ultimately denied it. The matter was tried to a jury, which found Bannister guilty. The court sentenced him to six years, all suspended except for two years as a direct placement with community corrections.

Bannister appealed, and the Court of Appeals affirmed. Bannister v. State, No. 03A04-0712-CR-749 *2 (Ind. Ct. App. June 27, 2008), vacated. We grant transfer and hold that they were right to do so.

2

**Reasonable Suspicion**

Bannister's contention has been that Officer Myers' stop violated Bannister's rights under the Fourth Amendment:  "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. CONST. amend. IV.

The Supreme Court has declared that its "protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrests."  United States v. Arvizu, 534 U.S. 266, 273 (2002) (citing Terry v. Ohio, 392 U.S. 1, 9 (1968)).  Still, the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity "may be afoot."  United States v. Sokolow, 490 U.S. 1, 7 (1989); see also United States v. Cortez, 449 U.S. 411, 417 (1981) ("An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity").

We review trial court determinations of reasonable suspicion *de novo* rather than for abuse of discretion, and "give due weight to inferences drawn from [the] facts by resident judges . . . ."  State v. Bulington, 802 N.E.2d 435, 438 n.1 (Ind. 2004) (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)).  We look at the "'totality of circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing."  Id. at 438 (citations omitted).  The State has the burden to show that under the totality of the circumstances its intrusion was reasonable.  Id.

There is no contention in this case about the legitimacy of the license plate check.  The issue joined is whether Officer Myers had reasonable suspicion that criminal activity was afoot at the time of the traffic stop.

Bannister argues that "the arresting officer had no reason to stop the vehicle except that a registered owner of the vehicle was [a] suspended [habitual traffic violator]."  (Appellant's Br. at 5.)  He specifically contends the stop in question was the first time Officer Myers had ever seen his vehicle and that Myers was unable to identify any characteristics of the driver.  (Appellant's

Br. at 6.)  Bannister further argues that it was not reasonable for a police officer to believe that a vehicle is being driven by a suspended driver just because the registered owner may have the vehicle registered in his name.  (Id.)[1]  The State argues that Officer Myers had reasonable suspicion to stop the vehicle and investigate "because there was a general match of the [driver's description] with the license plate check.  (Appellee's Br. at 5.)

In Wilkinson v. State, 743 N.E.2d 1267, 1269 (Ind. Ct. App. 2001), trans. denied, the court held that the stop of a vehicle whose plate indicated the owner was a habitual traffic violator was proper where the officer could see the driver and determine that the driver matched the description of the owner.  By contrast, the court in Ritter v. State, 801 N.E.2d 689, 693 (Ind. Ct. App. 2004), trans. denied, held it was proper to stop a vehicle to determine whether it was being driven by its owner, but said, "Had [the officer] been able to see the driver of the vehicle, and been able to discern that the person driving the car did not match the description of Ritter, our result might have been different."

The pertinent facts in this case resemble those in Wilkinson, and we reach the same result.  The transcript discloses that when Myers obtained the information from the license plate check and discovered Bannister's driving privileges were suspended for life, he also received a physical description of Bannister.  (Tr. at 4.)  As we noted above, that report described Bannister as 5 foot 7, 165 pounds with brown hair.  Officer Myers' recalled that the person he saw driving the Chevrolet S-10 through the intersection was a male with brown hair.  (Tr. at 40.)  Myers judged the driver as neither real tall nor real short.  (Tr. at 42, 86.)  On cross-examination, counsel extracted a pretty wide range about the driver's possible height.  (Tr. at 86.)  Still, Myers testified that he saw the driver at a lighted intersection in clear weather.  (Tr. at 40-41.)  He judged that the driver "closely matched the description of Mr. Bannister."  (Tr. at 9-10.)

Under this evidence, we conclude that Officer Myers had reasonable suspicion to conduct an investigatory stop to determine whether it was Bannister driving the vehicle.  The stop was not a violation of Bannister's Fourth Amendment rights.

---

[1] Cases posing similar questions are now pending, argued on January 15, 2009.  See Holly v. State, 888 N.E.2d 338 (Ind. Ct. App. 2008), trans. granted, and Armfield v. State. 894 N.E.2d 195 (Ind. Ct. App. 2008), trans. granted.

## Conclusion

We affirm the judgment of the trial court.

Dickson, Sullivan, Boehm, and Rucker, JJ., concur.