ATTORNEY FOR APPELLANT
Taffanee L. Keys
Fishers, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

In the
Indiana Supreme Court



No. 29S02-0811-CR-590

THOMAS A. ARMFIELD,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Hamilton Superior Court, No. 29D03-0509-FC-384
The Honorable William Greenaway, Judge Pro Tempore

On Petition to Transfer from the Indiana Court of Appeals, No. 29A02-0802-CR-101

**December 18, 2009**

**Sullivan, Justice.**

This case requires us to resolve the issue of when an officer has reasonable suspicion to initiate a traffic stop after a routine status check of a license plate reveals that the driver's license of the registered owner of the vehicle is suspended. We provide the analytical framework to resolve the issue presented here and in another case we decide today, Holly v. State, – N.E.2d –, No. 49S02-0811-CR-591, slip op. (Ind. Dec. 18, 2009).

**Background**

At approximately 12:30 a.m. on September 12, 2005, Carmel Police Officer Brian Schmidt was patrolling the roads during the night shift verifying vehicle registrations and running checks on license plates. Officer Schmidt ran a license plate check on a 1992 blue GMC, which was traveling in the same direction ahead of him. While waiting on the results, Officer Schmidt passed the GMC. The license plate check indicated that Thomas Armfield was the registered owner and that he had a lifetime suspension of his driving privileges. Officer Schmidt verified that the license plate, make, model, and color of the GMC matched the results from the check. He did not have the opportunity to verify anything about the identity of the driver in the short time it took for him to pass the GMC.[1] Officer Schmidt then asked Officer Michael Flynn, who was driving behind him, for assistance with initiating a traffic stop in order to identify the driver. Prior to the stop, he provided Officer Flynn the following information: the GMC's license plate number, a physical description of the vehicle, and the fact that the registered owner had a lifetime suspension of driving privileges.

After Officer Flynn initiated the stop, Officer Schmidt approached the vehicle and asked the driver if his name was Tom. The driver replied in the affirmative. Even though the driver did not have a physical form of identification, he again stated that he was Thomas Armfield and gave Officer Schmidt his date of birth. Officer Schmidt then arrested Armfield and transported him to the Hamilton County Jail. The State subsequently charged Armfield with Operating a Motor Vehicle After Forfeiture of License for Life, a Class C felony under Indiana Code Section 9-30-10-17. Challenging the validity of the traffic stop, Armfield filed a motion to suppress, which the trial court denied after an evidentiary hearing. At trial, the court overruled Armfield's objection to the testimony from Officer Schmidt regarding the traffic stop. The jury found Armfield guilty, and the trial court sentenced him to six years in the Indiana Department of Correction, with two years to be executed on work release and four years suspended to probation.

---

[1] In addition, Armfield testified at his suppression hearing that "[t]he window tint on that vehicle is dark tint, to where at night you would not be able to see through." (Tr. 13.)

Armfield appealed, and the Court of Appeals affirmed, holding that the stop was valid and that the trial court properly admitted the evidence resulting from the stop because "knowledge that the registered owner of the vehicle has a suspended license is enough to constitute reasonable suspicion for an officer to take the minimal action of initiating a traffic stop." Armfield v. State, 894 N.E.2d 195, 198 (Ind. Ct. App. 2008).[2] Armfield petitioned for, and we granted, transfer, Armfield v. State, 898 N.E.2d 1229 (Ind. 2008) (table), in order to resolve a split in the Court of Appeals on the issue of whether a police officer's knowledge that the registered owner of a vehicle has a suspended license constitutes reasonable suspicion to initiate an investigatory traffic stop.

**Discussion**

**I**

Armfield challenges the trial court's denial of his motion to suppress the evidence that was gathered from the traffic stop (i.e., Officer Schmidt's testimony regarding the stop). He argues that the stop violated his Fourth Amendment[3] rights because Officer Schmidt's knowledge that Armfield had a lifetime suspension of driving privileges did not constitute reasonable suspicion of criminal activity to initiate a stop.[4] His specific contention is that the stop was "imper-

---

[2] On appeal, Armfield also raised the issue of whether there was sufficient evidence to support his conviction. The Court of Appeals held that there was sufficient evidence to support Armfield's conviction. Armfield, 894 N.E.2d at 199. We summarily affirm the decision of the Court of Appeals on this point. Ind. Appellate Rule 58(A)(2).

[3] The Fourth Amendment to the United States Constitution states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." This provision applies to the states through the Fourteenth Amendment. Krise v. State, 746 N.E.2d 957, 961 (Ind. 2001) (citing Mapp v. Ohio, 367 U.S. 643, 650 (1961)).

[4] Armfield also contends for the first time in his petition to transfer that the traffic stop "infringed upon [his] privacy rights under Article 1, Section 11 of the Indiana Constitution." (Appellant's Pet. to Transf. 10.) He presents no arguments in his briefs to support this contention. We thus address his contentions in light of federal, not state, constitutional law. See Myers v. State, 839 N.E.2d 1154, 1158 (Ind. 2006) ("Where a party, though citing Indiana constitutional authority, presents no separate argument specifically treating and analyzing a claim under the Indiana Constitution distinct from its federal counterpart, we resolve the party's claim 'on the basis of federal constitutional doctrine and express no opinion as to what,

3

missible" because "Officer Schmidt did not obtain any physical description or other information which would have indicated Armfield was the driver" prior to initiating the stop. (Appellant's Pet. to Transf. 8.)

The U.S. Supreme Court has declared that the Fourth Amendment's "protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." United States v. Arvizu, 534 U.S. 266, 273 (2002) (citing Terry v. Ohio, 392 U.S. 1, 9 (1968)). Under Terry, an officer is permitted to "stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry, 392 U.S. at 30); see also United States v. Cortez, 449 U.S. 411, 417 (1981) ("An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity.").

We review trial court determinations of reasonable suspicion de novo. State v. Bulington, 802 N.E.2d 435, 438 (Ind. 2004) (citing Arvizu, 534 U.S. at 273-74). The U.S. Supreme Court has also directed reviewing courts to "make reasonable-suspicion determinations by look[ing] at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." Id.

The issue presented here is whether a police officer is required to verify that the driver of the vehicle matches the physical description of the registered owner obtained from the license plate check before there is reasonable suspicion to initiate a Terry stop.

Two strands of case law from the Court of Appeals address this question. One strand stands for the proposition that a police officer must verify that the driver of the vehicle matches the description of the owner obtained from the license plate check in order to have reasonable suspicion to initiate a Terry stop. In Wilkinson v. State, 743 N.E.2d 1267 (Ind. Ct. App. 2001), trans. denied, the court held that the stop of a vehicle whose license plate indicated the owner

---

if any, differences there may be' under the Indiana Constitution." (quoting Williams v. State, 690 N.E.2d 162, 167 (Ind. 1997))).

4

was a habitual traffic violator was proper where the officer could see the driver and determine that the driver matched the description of the owner.  Id. at 1271.  An often-cited footnote in Wilkinson stated:  "We note that had the officer not obtained a physical description or other information indicating Wilkinson was the driver of the car, we would find the stop impermissible . . . ."  Id. at 1271 n.2.  In Holly v. State, 888 N.E.2d 338 (Ind. Ct. App. 2008), aff'd on other grounds, – N.E.2d – (the companion case to this one), the court explicitly adopted the reasoning from Wilkinson and held that "[a] police officer's knowledge that an owner of a vehicle may not lawfully drive creates reasonable suspicion of criminal activity only where the officer has reason to believe that the owner is actually driving the vehicle."  Id. at 343.  The court found the stop in Holly to be improper because "the officer ha[d] observed absolutely nothing that would indicate that the driver of the vehicle [wa]s the owner[.]"  Id.

The second strand of Court of Appeals case law holds a police officer's knowledge that the registered owner of a vehicle has a suspended license constitutes reasonable suspicion to initiate a Terry stop without matching the driver with the owner's physical description.  In Kenworthy v. State, 738 N.E.2d 329 (Ind. Ct. App. 2000), trans. denied, the court concluded that the officer had "reasonable suspicion to stop and approach the truck to investigate" the identity of the driver because he had personal knowledge of the registered owner's license suspension, was aware that the vehicle he observed belonged to the registered owner, and confirmed his suspicions through a radio check.  Id. at 331.  The court found the stop to be proper even though "[d]ue to the late hour, [the officer] could not readily determine who was driving the truck[]" before he initiated the stop.  Id. at 330.  In State v. Ritter, 801 N.E.2d 689 (Ind. Ct. App. 2004), trans. denied, the court explicitly rejected Wilkinson and followed Kenworthy.  The court held that "[the officer] had a reasonable suspicion to stop Ritter's car in order to determine whether it was Ritter who was driving it[]" because his license plate check revealed that Ritter was its registered owner and that Ritter had a suspended license.  Id. at 693.  The fact that "[the officer] could not see the person driving the vehicle and could not verify if the driver matched the description of Ritter" did not make the stop improper.  Id.[5]

---

[5] The court noted that "[h]ad [the officer] been able to see the driver of the vehicle, and been able to discern that the person driving the car did not match the description of Ritter, our result might have been different.  However, we are not faced with that situation."  Ritter, 801 N.E.2d at 693.

In the case before us, the court explicitly agreed with Ritter and Kenworthy "that knowledge that the registered owner of the vehicle has a suspended license is enough to constitute reasonable suspicion for an officer to take the minimal action of initiating a traffic stop." Armfield, 894 N.E.2d at 198.

II

In Bannister v. State, 904 N.E.2d 1254 (Ind. 2009), Officer Myers saw a pickup truck pass in front of him at an intersection, proceeded to follow the truck, and then conducted a license plate check. The check indicated that Bannister was the registered owner, and that his driver's license had been suspended for life because he was a habitual traffic offender. The check also indicated Bannister's gender, height, weight, and hair color. Id. at 1255. Based on this physical description and his unobstructed view of the driver as the truck passed in front of him,[6] the officer stopped the vehicle to determine whether the driver was Bannister. Id. On appeal, Bannister argued that the officer's knowledge that the registered owner of the vehicle was a habitual traffic offender did not constitute reasonable suspicion to initiate a Terry stop. He specifically contended that the stop was improper because it was the first time Officer Myers had ever seen his vehicle and that Myers was unable to identify any characteristics of the driver. Id. at 1256.

Contrary to Bannister's contentions, this Court noted the officer's trial testimony that the driver was a male with brown hair, which closely matched the physical description of Bannister obtained prior to the stop. Id. We also credited the officer's testimony that he saw the driver at a lighted intersection in clear weather. We analogized the facts in Bannister to those in Wilkinson, where the officer making the Terry stop could see the driver and determine that the driver matched the description of the owner. Based on these similar facts, we arrived at the same result as the court in Wilkinson, and held that "[u]nder this evidence, we conclude that [the officer] had

---

[6] The officer's testimony at trial was that he saw the driver at a lighted intersection in clear weather and that the driver "closely matched the description of Mr. Bannister [that he received from the license check]." Id. at 1256.

reasonable suspicion to conduct an investigatory stop to determine whether it was Bannister driving the vehicle. The stop was not a violation of Bannister's Fourth Amendment rights." Id. We also discussed Ritter, which, as noted above, held that it had been proper to stop a vehicle to determine whether it was being driven by its owner, but had also said, "'Had [the officer] been able to see the driver of the vehicle, and been able to discern that the person driving the car did not match the description of Ritter, our result might have been different.'" Id. (quoting Ritter, 801 N.E.2d at 693).

Bannister did not, however, explicitly provide the rule for the question presented here: whether a police officer is required to verify that the driver of the vehicle matches the physical description of the registered owner obtained from the license plate check before there is reasonable suspicion to initiate a Terry stop. In this regard, state courts in other jurisdictions have provided helpful guidance. State supreme courts that have addressed this issue uniformly hold that an officer has reasonable suspicion to initiate a Terry stop when (1) the officer knows that the registered owner of a vehicle has a suspended license and (2) the officer is unaware of any evidence or circumstances which indicate that the owner is not the driver of the vehicle. See State v. Tozier, 905 A.2d 836, 838-39 (Me. 2006); Commonwealth v. Deramo, 762 N.E.2d 815, 818 (Mass. 2002); State v. Pike, 551 N.W.2d 919, 922 (Minn. 1996); State v. Halvorson, 997 P.2d 751, 753 (Mont. 2000); State v. Richter, 765 A.2d 687, 689 (N.H. 2000). State intermediate courts of appeal that have contended with this issue have reached the same conclusion. See Village of Lake in the Hills v. Lloyd, 591 N.E.2d 524, 526 (Ill. App. Ct. 1992); State v. Mills, 458 N.W.2d 395, 397 (Iowa Ct. App. 1990); People v. Jones, 678 N.W.2d 627, 631 (Mich. Ct. App. 2004); State v. Howard, 766 N.E.2d 179, 183 (Ohio Ct. App. 2001); State v. Panko, 788 P.2d 1026, 1027 (Or. Ct. App. 1990).

The safety of Indiana's roadways strongly points toward initiating a Terry stop when the police officer knows that the registered owner of a vehicle has a suspended license. But this legitimate public safety concern is, of course, subject to the Fourth Amendment right to be secure from unreasonable searches and seizures. We believe that this right is vindicated by requiring

that officers must be unaware of any evidence or circumstances which indicate that the owner is not the driver of the vehicle before initiating a <u>Terry</u> stop.[7]

We hold that an officer has reasonable suspicion to initiate a <u>Terry</u> stop when (1) the officer knows that the registered owner of a vehicle has a suspended license and (2) the officer is unaware of any evidence or circumstances which indicate that the owner is not the driver of the vehicle. This rule does not require officers to match the physical description of the registered owner from the license plate check to the driver of the vehicle before initiating a <u>Terry</u> stop. We agree with the State that "requiring the officer to verify the driver of the vehicle strikes against basic principles of safety [because it] puts the onus on the officer to maneuver himself into a position to clearly observe the driver in the midst of traffic." (State's Resp. to Accept Transf. 5.) In addition, we acknowledge the difficulty that the driver verification requirement would impose on officers during late night hours and in situations where car windows are darkly tinted, as was the case here.

To the extent that prior opinions of the Court of Appeals are inconsistent with our holding today, we disapprove those decisions. See <u>Holly</u>, 888 N.E.2d 338, <u>aff'd on other grounds</u>, – N.E.2d –; <u>Wilkinson</u>, 743 N.E.2d 1267.

---

[7] Courts in other jurisdictions have provided helpful examples of evidence or circumstances which indicate that the owner is not the driver of the vehicle. The Minnesota Supreme Court posited this hypothetical:

> [I]f the officer knows that the owner of a vehicle has a revoked license and further, that the owner is a 22-year-old male, and the officer observes that the person driving the vehicle is a 50- or 60-year-old woman, any reasonable suspicion of criminal activity evaporates. Absent other articulable facts which would give rise to such suspicion, it would be unconstitutional for the officer to make a stop in such a situation.

<u>Pike</u>, 551 N.W.2d at 922. The Supreme Judicial Court of Maine has noted that "if the driver were of a different gender than the owner, the officer would lack reasonable grounds to assume the owner was driving." <u>Tozier</u>, 905 A.2d at 839 n.1 (citing <u>Jones</u>, 678 N.W.2d at 631 n.4 ("[I]f the registered owner was a male and the driver was a female, the officer would not have reasonable grounds to assume that the driver was the owner.")). We agree with these courts that under such circumstances, the officer would lack reasonable suspicion to initiate a <u>Terry</u> stop.

Here, while driving behind Armfield's vehicle, Officer Brian Schmidt conducted a license plate check at approximately 12:30 a.m. After he passed the vehicle, the results from the check revealed that its registered owner, Thomas Armfield, had a lifetime suspension of driving privileges. Officer Schmidt did not remember if the vehicle had tinted windows or anything that would prevent him from seeing inside the vehicle prior to the stop, but Armfield testified at his suppression hearing that "[t]he window tint on that vehicle is dark tint, to where at night you would not be able to see through." (Tr. 13.) Officer Schmidt confirmed that the license plate, make, model, and color of the vehicle matched the information from the license plate check before initiating the stop. He testified that the check also provided him with the registered owner's name, address, and physical description. Officer Schmidt made the stop in order to determine whether the information he received from the check matched that of the driver. He approached the vehicle and asked if the driver was Tom, to which the driver affirmatively responded. Even though he had no physical form of identification at the time of the stop, the driver further identified himself as Thomas Armfield and provided his date of birth. Officer Schmidt then arrested Armfield and transported him to the Hamilton County Jail.

Under the two-prong test that we adopt today, we conclude that Officer Schmidt had reasonable suspicion to conduct a <u>Terry</u> stop of Armfield's vehicle because (1) he had knowledge that Armfield was the registered owner of the vehicle and that Armfield had a lifetime suspension of driving privileges and (2) he was unaware of any evidence or circumstances which indicated that Armfield was not the driver of the vehicle. Officer Schmidt also acted properly after initiating the stop when he first ascertained the registered owner's name, address, and physical description before he approached the vehicle and then verified that the name of the driver matched that of the registered owner.

**Conclusion**

The investigatory <u>Terry</u> stop of Armfield's vehicle was proper. We therefore affirm the trial court's denial of Armfield's motion to suppress the evidence gathered during the stop. The trial court properly admitted this evidence, and we affirm its judgment.

Shepard, C.J., and Dickson, Boehm, and Rucker, JJ., concur.