**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jan 09 2013, 9:12 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**THOMAS A. DYSERT**
Petersburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BRIAN E. GREEN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 63A04-1203-CR-141 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE PIKE CIRCUIT COURT
The Honorable Jeffrey L. Biesterveld, Judge
Cause No. 63C01-0912-FC-745

**January 9, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

Brian E. Green ("Green") appeals the trial court's interlocutory order denying his motion to suppress evidence seized after officers stopped the vehicle in which Green was a passenger.

We affirm.

## ISSUE

Whether the trial court abused its discretion in denying Green's motion to suppress evidence seized after a traffic stop.

## FACTS AND PROCEDURAL HISTORY

At approximately 4:15 p.m. on November 27, 2009, Indiana Department of Natural Resources Law Enforcement Division Officers Duane Englert ("Officer Englert") and Trent Stinson ("Officer Stinson") (collectively, "the officers") were patrolling in Pike County. Officer Englert had stopped the vehicle at a stop sign on a road that intersected a curve on a second road. Motorists on the second road had the right of way.

The officers had received numerous complaints of occupants in slow-moving vehicles illegally firing shots at deer from inside their vehicles, and one of the officers' purposes was to look for such slow-moving vehicles. Occupants of these slow-moving vehicles in rural areas were often looking for deer to hunt, while some were looking to poach by shooting the deer from the vehicle.

The officers noticed a pickup truck "from a ways away" approaching them at a "fairly slow speed." (Tr. 6, 52-53). When the pickup approached the point in the road

2

near where the officers were stopped, it came to a near or complete stop, and the driver of the pickup, later identified as James Dillard ("Dillard"), waved the officers through the intersection. The passenger, Green, sat in the vehicle with his head down.

When the officers did not move, Dillard increased his speed and continued down the road. The officers ran a license plate check that revealed no violations and then began to follow the pickup. The officers observed Dillard pull the pickup into the first available driveway, which was on the property of a family named Anson. After watching Dillard stop the pickup approximately fifty to seventy-five yards into the driveway, Officer Englert pulled in behind the pickup, blocking the driveway by parking at a ninety degree angle. The patrol car was approximately twenty to fifty feet behind the pickup.

Officer Englert exited the patrol car and approached the driver's side of the pickup, and Officer Stinson approached the passenger side. Dillard and Green told the officers that they had pulled into the driveway to turn around, but neither could explain why they had pulled so far into the driveway. Dillard had no explanation for waving the officers through the intersection.

Officer Eglert obtained Dillard's driver's license, while Officer Stinson had Green identify himself. As Officer Englert returned to his patrol car to conduct a records check, Officer Stinson stayed with the pickup. Officer Stinson observed the silver butt of a handgun sticking out between the split in the seat, and he asked the men whether they had licenses to carry a handgun. The men did not initially respond, and Officer Stinson asked

3

them to exit the pickup. After the men exited the pickup, Officer Stinson handcuffed them.

Officer Stinson advised both men of their *Miranda* rights, and he then obtained the gun from the pickup. It was loaded with its safety turned off. Green told Officer Stinson how to unload the handgun. He further stated that the gun belonged to his wife and that he had been carrying it.

Green admitted that he did not have a license to carry a handgun, and the officers arrested him. An inventory search at the jail revealed that Green had hidden methamphetamine in his sock. Green also had drug paraphernalia on his person.

Because Green had a prior felony conviction within fifteen (15) years, the State charged Green with carrying a handgun without a license as a class C felony. *See* Ind. Code § 35-47-2-23(c)(2)(B). The State also charged Green with possession of methamphetamine, a class D felony; and possession of paraphernalia, a class A misdemeanor. Green filed a motion to suppress the evidence on the basis that it was unlawfully obtained. After a suppression hearing, the trial court denied the motion. Upon Green's further motion, the trial court certified its order for interlocutory appeal and stayed the proceedings pending a decision by this Court. We accepted jurisdiction.

DECISION

Green contends that the trial court erred in denying his motion to suppress. He reasons that he was unlawfully detained under both the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution. However,

4

Green does not develop a specific argument pursuant to the Indiana Constitution, and he has waived the issue. *See Carroll v. State*, 822 N.E.2d 1083, 1087 (Ind. Ct. App. 2005) (failure to provide independent analysis and cogent argument under Article I, § 11 of Indiana Constitution results in waiver of issue on appeal).

We review the denial of a motion to suppress "in a manner similar to other sufficiency matters." *Harper v. State*, 922 N.E.2d 75, 78 (Ind. Ct. App. 2010), *trans. denied*. In conducting our review, we do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Id*. However, unlike the typical sufficiency of the evidence cases where only the evidence favorable to the judgment is considered, we must consider the uncontested evidence favorable to the defendant. *Id.* at 78-79. "Although we generally review a trial court's decision to admit evidence despite a motion to suppress under an abuse of discretion standard, the ultimate determination of whether an officer had reasonable suspicion to conduct an investigatory stop is reviewed de novo." *Id*. at 79.

"The Fourth Amendment regulates nonconsensual encounters between citizens and law enforcement officials and does not deal with situations in which a person voluntarily interacts with a police officer." *Finger v. State*, 799 N.E.2d 528, 532 (Ind. 2003). A full-blown arrest or a detention that lasts for more than a short period of time must be justified by probable cause. *Id*. A brief investigative stop, however, may be justified by reasonable suspicion that the persons detained are involved in criminal activity. *Id*.

5

The State argues that the officers' discussion with Dillard and Green was consensual up to the time that the officers saw the handgun. "Detention turns on an evaluation, under all circumstances, of whether a reasonable person would feel free to disregard the police and go about his or her business." *Id.* Here, Officer Englert blocked all or most of the driveway with his vehicle; thus, Dillard would have had to risk hitting the patrol vehicle as he slowly backed out of the driveway. We cannot conclude that a reasonable person would feel free to disregard the blocking of the driveway under these circumstances. Dillard and Green were detained at the time Officer Englert blocked their egress.

The issue before us, then, is whether the officers had reasonable suspicion to stop Dillard and Green. A trial court's determination that the officer had reasonable suspicion for the stop is reviewed *de novo*, but due weight is given to inferences drawn from the facts by the trial court. *Armfield v. State*, 918 N.E.2d 316, 319 (Ind. 2009). Moreover, when making our determination regarding reasonable suspicion, we consider the totality of the circumstances of the case in order to determine whether the officer had a particularized and objective basis for suspecting wrongdoing by the person being stopped. *Id*. Reasonable suspicion is an abstract concept that is not readily reduced to a neat set of rules; however, the reasonable suspicion requirement is satisfied where "the facts known to the officer, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe criminal activity has occurred or is about to occur." *L.W. v. State*, 926 N.E.2d 52, 55 (Ind. Ct. App. 2010). Stated

differently, an officer is permitted stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity "may be afoot," even if the officer lacks probable cause. *Terry v. Ohio*, 392 U.S. 1, 9 (1968). Reasonable suspicion requires more than mere hunches or unparticularized suspicions. *Finger*, 799 N.E.2d at 534 (Ind. 2003). Officers must be able to point to specific facts giving rise to reasonable suspicion of criminal activity.

In this case, at the time they stopped the pickup, Officers Englert and Stinson relied on the following facts: (1) Dillard was driving extremely slowly in a sparsely populated area where hunters break the law by trolling for deer and illegally shooting them from a vehicle; (2) Dillard, who did not have a stop sign, stopped or nearly stopped in the middle of the road to wave the officers across the road; (3) after the officers refused to move their patrol car, Dillard increased his speed and turned into the first available driveway; (4) Dillard pulled some distance into the driveway, indicating that he was not trying to turn around; and (5) the officers knew that Dillard was pulling into another person's driveway.

First, the officers were put on alert by the exceedingly slow speed of the pickup that Dillard and Green might be engaging in the illegal poaching of deer. Second, Dillard's odd behavior of attempting to wave the officers away further raised suspicion that he did not want the officers in the area and that he especially did not want the officers to follow the pickup. Finally, Dillard's excessive ingress into the next available driveway further caused the officers to believe that he did not want the officers to know

7

what he was doing. While none of these actions, standing alone, were sufficient to constitute reasonable suspicion that criminal activity was afoot, the totality of the circumstances gave rise to such suspicion. In short, the circumstances combined to cause the officers to believe that Dillard and Green had or were about to commit an act that made them attempt to avoid the officers.

Under the totality of the circumstances, Officers Englert and Stinson had reasonable suspicion to briefly detain Dillard. A legal arrest and search, as well as legal seizure of the handgun, the methamphetamine, and drug paraphernalia, resulted from the circumstances arising after the detention.

Affirmed.

ROBB, C.J., and MAY, J., concur.