## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 25 2016, 8:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brandon E. Murphy
Public Defender's Office
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Shannon C. Blankenship, *Appellant-Defendant,* | July 25, 2016 |
| | Court of Appeals Case No. 18A02-1601-CR-196 |
| v. | Appeal from the Delaware Circuit Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Thomas A. Cannon, Jr., Judge |
| | Trial Court Cause No. 18C05-1203-FD-34 |

**Robb, Judge.**

# Case Summary and Issue

[1] Following a bench trial, Shannon Blankenship was found guilty of operating a vehicle while privileges are suspended as an habitual traffic violator ("operating while HTV"), a Class D felony. Blankenship appeals his conviction, raising the sole issue of whether the trial court abused its discretion in admitting evidence he alleges was obtained in violation of the Fourth Amendment. Concluding the traffic stop did not violate the Fourth Amendment and therefore the trial court did not abuse its discretion in admitting the evidence, we affirm.

# Facts and Procedural History

[2] As part of an investigation he conducted in September 2011, Corporal Tony Skinner of the Delaware County Sheriff's Department learned that Blankenship's driver's license was suspended due to Blankenship's status as an habitual traffic violator. On February 20, 2012, Corporal Skinner saw Blankenship get into his car and drive away. Having reason to believe from his earlier investigation that Blankenship was driving on a suspended license, Corporal Skinner initiated a traffic stop. Blankenship, the sole occupant of the car, did not provide a driver's license, but did provide his name and date of birth. A police dispatcher confirmed that Blankenship's license was suspended.

[3] The State charged Blankenship with operating a vehicle while HTV. A week before his scheduled bench trial, Blankenship filed a motion to suppress evidence from the traffic stop, alleging the stop was premised on information

that was insufficient to establish reasonable suspicion. Because Corporal Skinner was the State's lone witness, the trial court heard evidence on the date set for bench trial for the dual purposes of ruling on the motion to suppress and, if the motion was ultimately denied, determining Blankenship's guilt. Corporal Skinner testified he conducted the traffic stop because he "knew that [Blankenship] was driving on [a] suspended license, an HTV status license." Transcript at 10. The trial court denied Blankenship's motion to suppress:

> [I]t would be a little bit easier if the officer had simply said, "When I saw Mr. Blankenship come out of his house, I did another quick license check and it was still HTV." But, that doesn't really go to the crucks [sic] of the matter here and that is, did he have reasonable suspicion based upon his prior investigation to make the investigatory stop . . . . And, in this case, I believe that the evidence would support that he did, that five months is not a sufficiently long period of time to make the information that an individual has a suspended license stale. Even if it did, the evidence in this case would support that the stop was only for the appropriate period of time to obtain driver's license information or to call . . . the name and identifying information in to get a report which the officer testified that he did which then gave him the probable cause to then place the defendant under arrest. So, I think the officer's actions in this case were based on reasonable suspicion from a totality of the circumstances . . . .

*Id.* at 27-28. The trial court then found Blankenship guilty of operating a vehicle while HTV and sentenced him to serve three years on electronic home detention through a direct commitment to community corrections. Blankenship now appeals his conviction.

# Discussion and Decision

## I. Standard of Review

[4] Our standard of reviewing rulings on the admissibility of evidence is the same whether the challenge is made by a pre-trial motion to suppress or by objection at trial: we must determine whether there is substantial evidence of probative value to support the ruling. *Woodson v. State*, 960 N.E.2d 224, 226 (Ind. Ct. App. 2012). In doing so, we do not reweigh evidence and we construe conflicting evidence most favorably to the ruling and uncontested evidence most favorably to the defendant. *Id.*

## II. Validity of Stop

[5] The Fourth Amendment to the United States Constitution affords individuals protection from "unreasonable searches and seizures."[1] The Fourth Amendment's protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest. *Id.* at 227 (citing *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). However, a lower standard than probable cause is sufficient to justify an investigatory stop: reasonable suspicion that criminal activity may be afoot. *Id.* Reasonable suspicion requires there be

---

[1] The Indiana Constitution extends similar protections. Ind. Const. art. 1, § 11. Notwithstanding the similarities, Section 11 of the Indiana Constitution is interpreted independently from the Fourth Amendment. *Robinson v. State*, 5 N.E.3d 362, 368 (Ind. 2014). Blankenship's motion to suppress raised the question of whether the stop violated the Indiana Constitution but his appeal does not. Any claim of error under the Indiana Constitution is therefore forfeited. *See Wertz v. State*, 41 N.E.3d 276, 278 n.1 (Ind. Ct. App. 2015), *trans. denied*.

"some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *Id.* (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)). When we review an investigatory stop for reasonable suspicion, we look at the totality of the circumstances in the particular case to see whether the officer has a "particularized and objective basis for suspecting legal wrongdoing." *Id.* (quoting *Arvizu*, 534 U.S. at 273) (internal quotation marks omitted). We review trial court determinations of reasonable suspicion de novo. *State v. Bulington*, 802 N.E.2d 435, 438 (Ind. 2004).

[6] Blankenship relies primarily on *Armfield v. State*, 918 N.E.2d 316 (Ind. 2009), to support his argument that Corporal Skinner's knowledge of Blankenship's license status five months prior to the stop was insufficient to support reasonable suspicion that he was engaged in criminal activity by driving his vehicle at the time of the stop.[2] In *Armfield*, an officer on patrol ran a routine license plate check on a 1992 GMC that indicated the driving privileges of the registered owner of the vehicle, Thomas Armfield, had been suspended for life. The officer verified the license plate, make, model, and color of the GMC matched the results from the check but was unable to verify anything about the identity of the driver as he passed the vehicle. The officer initiated a traffic stop to identify the driver. The driver had no physical form of identification but affirmed his name was Thomas Armfield and gave his date of birth. Armfield

---

[2] The State agrees the *Armfield* analysis is the appropriate test. *See* State's Brief of Appellee at 7-8.

was charged with operating a motor vehicle after forfeiture of license for life, a Class C felony. Armfield's pre-trial motion to suppress was denied by the trial court, and his in-court objection to the officer's testimony was overruled. A jury found him guilty as charged.

[7] Our supreme court considered the question of "whether a police officer's knowledge that the registered owner of a vehicle has a suspended license constitutes reasonable suspicion to initiate an investigatory traffic stop." *Id.* at 318. After considering the divergent line of Court of Appeals cases on this issue and how state courts in other jurisdictions have addressed it, the court held "an officer has reasonable suspicion to initiate a *Terry* stop when (1) the officer knows that the registered owner of a vehicle has a suspended license and (2) the officer is unaware of any evidence or circumstances which indicate that the owner is not the driver of the vehicle." *Id.* at 321-22. Based on the circumstances of the stop, the court held the investigatory stop of Armfield's vehicle was proper because the officer had knowledge that Armfield was the registered owner of the vehicle and that Armfield had a lifetime license suspension and he was unaware of any evidence or circumstances indicating Armfield was not the driver of the vehicle at the time of the stop. *Id.* at 322; *see also Holly v. State*, 918 N.E.2d 323, 325-26 (Ind. 2009) (applying *Armfield* framework to hold officer had reasonable suspicion to initiate a *Terry* stop when a routine license plate check indicated the registered owner of the vehicle traveling in front of him had a suspended license; however, the check also returned information that the registered owner of the vehicle was a female and

when the officer observed upon stopping the car that the driver was a male, he had no justification for extending the stop by requesting identifying information from the driver); *Johnson v. State*, 21 N.E.3d 841, 846 (Ind. Ct. App. 2014) (holding police officer lacked reasonable suspicion to request identification from driver of vehicle registered to a suspended driver after passenger in the car advised she was the registered owner and officer had no reason to disbelieve her), *trans. denied*.

[8] *Armfield* and cases following it turned on the second prong of the *Armfield* framework—whether there were circumstances indicating the driver of a vehicle was not the person whom police knew had a suspended license. Here, there seems to be no dispute that Corporal Skinner knew Blankenship was the driver of the vehicle, as Blankenship was personally known to him and he witnessed Blankenship enter the car and drive away as the sole occupant. Rather, this case concerns an issue with respect to the first prong, which Blankenship states as "whether a police officer is required to verify that the driver of the vehicle is suspended before there is reasonable suspicion to initiate a *Terry* stop." Defendant-Appellant's Brief at 9. He parses the language in *Armfield* very specifically and contends Corporal Skinner did not "know" when he initiated the stop Blankenship had a suspended license, he "only *knew* that [Blankenship] *once had* a suspended license." *Id.* at 10.

[9] We acknowledge Blankenship's concern that a law enforcement officer not be allowed to stop a vehicle based on his prior knowledge of any type of suspension, no matter how dated. And we agree with the trial court that it

would have been a simple matter for Corporal Skinner to confirm that Blankenship still had a suspended license prior to initiating the traffic stop. Regardless, we cannot agree with Blankenship that under the facts of this case he was required to do so. "[R]easonable suspicion . . . is dependent upon both the content of information possessed by police and its degree of reliability." *Washburn v. State*, 868 N.E.2d 594, 601 (Ind. Ct. App. 2007), *trans. denied*. Both the quantity and quality of the information—including its purported staleness— are to be assessed in evaluating whether reasonable suspicion exists based on the totality of the circumstances. *Id.* "[S]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment . . . ." *Hill v. California*, 401 U.S. 797, 804 (1971).

[10] Corporal Skinner knew from an investigation just a few months prior that Blankenship had a suspended license. Presumably, he also learned at that time that Blankenship's license was suspended effective November 2010 for a period of ten years. *See* State's Exhibit 1 (certified copy of Blankenship's driving record from the Indiana Bureau of Motor Vehicles). The stop occurred only a little over a year into that suspension. It is true that in the five months since Corporal Skinner first learned of Blankenship's license suspension, various things could have happened to affect that status, but no evidence or circumstances exist that would indicate Corporal Skinner had reason to believe that had happened. Accordingly, Corporal Skinner had reasonable suspicion to initiate an investigatory stop and the trial court did not abuse its discretion in admitting evidence from the stop. If Corporal Skinner's information had

indeed been wrong due to events in the intervening five months, Blankenship would have been on his way within a matter of minutes.

# Conclusion

[11] Under the totality of these circumstances, Corporal Skinner had reasonable suspicion that Blankenship was operating a car with a suspended license and was therefore justified in initiating a brief traffic stop. The trial court did not abuse its discretion in allowing evidence obtained as a result of the stop. Blankenship's conviction is affirmed.

[12] Affirmed.

Najam, J., and Crone, J., concur.