

FILED

Jul 03 2019, 7:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Zachary J. Stock
Attorney at Law, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

Edgar Santiago,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

July 3, 2019

Court of Appeals Case No.
19A-CR-495

Appeal from the Hendricks
Superior Court

The Honorable Mark A. Smith,
Judge

Trial Court Cause No.
32D04-1806-CM-826

**Baker, Judge.**

[1] Edgar Santiago appeals his conviction for Class A Misdemeanor Driving While Suspended,[1] arguing that the trial court erred when it admitted evidence of his suspended driver's license because the prolonged stop violated the Fourth Amendment to the United States Constitution. Finding no error, we affirm.

# Facts

[2] On June 19, 2018, Avon Police Department Officer Mercedes Spicer was patrolling in her fully marked police car when she stopped behind a Toyota truck at a red light. Officer Spicer ran a license plate check of the truck and discovered that it belonged to a man named Valentine Hernandez and that Hernandez's license had been suspended. Officer Spicer spotted the driver of the truck and saw that he, too, was a man. With this information, she turned on her patrol lights and conducted a traffic stop under the suspicion that the driver, who Officer Spicer believed was Hernandez, was operating a motor vehicle with a suspended license.

[3] Officer Spicer then approached the driver's side of the vehicle and told the driver, who was later identified as Santiago, that she had stopped the vehicle because the owner's driver's license had been suspended. Santiago, the sole occupant of the vehicle, told Officer Spicer that his cousin owned the truck and that he was not Valentine Hernandez. To confirm this information, Officer

---

[1] Ind. Code § 9-24-19-2.

Spicer asked Santiago for his driver's license, but Santiago handed her a Mexican identification (ID) card identifying him as Edgar Santiago. Officer Spicer clarified that she wanted to see his driver's license and not just an ID card; Santiago replied that he did not have a driver's license.

[4]     Officer Spicer returned to her police car and ran a search of Santiago using his Mexican ID. She discovered that Santiago's driver's license had been suspended and that he had a prior conviction for driving while suspended. Consequently, Officer Spicer arrested Santiago and had the vehicle towed.

[5]     On June 20, 2018, the State charged Santiago with Class A misdemeanor driving while suspended. Soon after, Santiago filed a motion to suppress evidence that his driver's license was suspended, arguing that the prolonged investigatory stop violated the Fourth Amendment to the United States Constitution. The trial court denied his motion to suppress. At Santiago's February 25, 2019, bench trial, Santiago renewed his objection to the admission of the evidence, which the trial court overruled. The trial court found Santiago guilty as charged. During sentencing later that same day, the trial court imposed fines without any period of probation or incarceration. Santiago now appeals.

# Discussion and Decision

[6]     Santiago raises one argument on appeal—namely, that the trial court erred when it admitted evidence of his suspended driver's license because the prolonged investigatory stop violated the Fourth Amendment to the United

States Constitution. Specifically, Santiago contends that this evidence was obtained during an unconstitutional extension of an initially valid traffic stop.

[7] As a general matter, the Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures. "[T]he Fourth Amendment's 'protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest.'" *Armfield v. State*, 918 N.E.2d 316, 319 (Ind. 2009) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). And evidence that is the product of an unlawful seizure is inadmissible under the Fourth Amendment. *Hanna v. State*, 726 N.E.2d 384, 389 (Ind. Ct. App. 2000) (holding that evidence obtained from illegal searches and seizures is "fruit of the poisonous tree" and is inadmissible in a court of law).

[8] Reversal of a trial court's decision to admit evidence is appropriate only where the decision is clearly against the logic and effect of the facts and circumstances. *Joyner v. State*, 678 N.E.2d 386, 390 (Ind. 1997). "Moreover, we will sustain the trial court['s] [decision on the admission of evidence] if it can be done on any legal ground apparent in the record." *Jester v. State*, 724 N.E.2d 235, 240 (Ind. 2000). However, we will review a trial court's conclusions of law de novo, giving no weight to the legal analysis below. *Sanders v. State*, 989 N.E.2d 332, 334 (Ind. 2013). In reviewing determinations of reasonable suspicion specifically, we look at the totality of the circumstances of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. *State v. Burlington*, 802 N.E.2d 435, 438 (Ind. 2004).

[9] Here, Santiago does not contest the validity of the initial *Terry*[2] stop of the vehicle. Santiago concedes that Officer Spicer had a reasonable suspicion that the owner was driving the vehicle with a suspended license, thereby allowing her to conduct a routine traffic stop. *See, e.g., Jacobs v. State*, 76 N.E.3d 846, 850 (Ind. 2017). Rather, Santiago argues that Officer Spicer's initial reasonable suspicion leading to the traffic stop dissipated as soon as she determined that Santiago was not Valentine Hernandez, the owner of the vehicle. *Rodriguez v. United States*, 575 U.S. __, 135 S.Ct. 1609, 1615, 191 L.Ed.2d 492 (2015) (finding that a traffic stop becomes unlawful "if it is prolonged beyond the time reasonably required to complete th[e] mission" of the stop itself). According to Santiago, Officer Spicer had already determined from both Santiago's replies and his Mexican ID card that Santiago was not Hernandez before she asked for his driver's license a second time. Therefore, because the mission of the stop was to investigate the owner of the car (Hernandez), any further questioning by Officer Spicer unlawfully prolonged the stop and violated the Fourth Amendment.

[10] Santiago cites *Holly v. State*, in which our Supreme Court encountered a very similar situation also challenged on Fourth Amendment grounds. 918 N.E.2d 323 (Ind. 2009). In *Holly*, Indianapolis Metropolitan Police Department Officer Jason Ross ran a license plate check of the vehicle travelling in front of him and

---

[2] *Terry v. Ohio*, 392 U.S. 1, 30 (1968) (holding that officers may conduct brief investigatory stops "where a police officer observes unusual conduct which leads him [or her] reasonably to conclude in light of his [or her] experience that criminal activity may be afoot").

discovered that the vehicle's owner was a Black woman named Terry Sumler and that she had a suspended driver's license. Officer Ross conducted a traffic stop and immediately noticed that the driver was a Black man, later identified as Damen Holly. There were two other passengers in the vehicle: Sumler and Holly's brother. Confused, Officer Ross asked Holly for his driver's license. Holly stated that he did not have his driver's license, so Officer Ross went back to his vehicle to run Holly's information. Officer Ross then discovered that Holly's driver's license was also suspended, so Officer Ross ordered everyone out of the vehicle. He and a back-up officer conducted a search of the vehicle and found a small baggie of marijuana. Officer Ross arrested Holly.

[11]     Holly later challenged the admission of any evidence obtained from the officer's inquiry about his driver's license or the subsequent search on the same grounds as Santiago. Specifically, Holly conceded that Officer Ross had the reasonable suspicion to conduct a traffic stop of the vehicle under the belief that the owner, Sumler, was driving it with a suspended driver's license. However, Holly argued that once it was apparent that he was not Sumler and not the owner of the vehicle, Officer Ross's reasonable suspicion dissipated, and any further inquiry unlawfully prolonged the *Terry* stop in violation of the Fourth Amendment. Our Supreme Court ruled in Holly's favor, holding, in pertinent part, as follows:

> To be sure, if a license plate check reveals that the driver's license of the vehicle's registered owner has been suspended, then there is reason to believe (a) the registered owner is driving the vehicle, and thus (b) is doing so illegally. Under those circumstances, in *Terry* terms, an officer has reasonable suspicion to believe that

criminal activity is afoot. *But once it becomes apparent that the driver of the vehicle is not the owner then an officer simply has no reason to conduct additional inquiry.* An officer has reasonable suspicion to conduct a *Terry* stop when among other things, "the officer is unaware of any evidence or circumstances which indicate that the owner is not the driver of the vehicle."

*Id.* at 325 (quoting *Armfield v. State*, 918 N.E.2d 316, 322 (Ind. 2009)) (emphasis added).

[12] According to our Supreme Court, the "stubbornly clear" evidence that Holly was a man and Sumler was a woman proved that Holly was not the vehicle's owner, thereby making Officer Ross's request for Holly's driver's license violative of the Fourth Amendment. *Id.* at 326. In other words, the additional request for Holly's driver's license, which led to a search of the vehicle, unlawfully prolonged the stop because Officer Ross's reasonable suspicion that Sumler had been driving the vehicle had already evaporated. Simply put, "[r]easonable suspicion to pull a car over does not confer unconditional authority to request the driver's license and registration." *Id.*

[13] Despite Santiago's claim that his scenario is identical to that of Holly's, his argument is unavailing. Key facts distinguish Santiago's case from Holly's—namely, those related to identification. Unlike Officer Ross in *Holly*, whose reasonable suspicion vanished as soon as he saw that the driver was a man and not a woman, Officer Spicer could not immediately determine that Santiago was not Hernandez, the owner of the car. Officer Spicer's license plate search of the vehicle in front of her showed that the vehicle was owned by a Latino man

named Valentine Hernandez. Officer Spicer then stopped the vehicle, approached the driver's side, and found a Latino man driving the vehicle. Therefore, we hold that it was within the officer's authority to ask for a driver's license to confirm Santiago's identity because it was not immediately apparent that he was not the owner of the vehicle.[3]

[14] Furthermore, Indiana law supports the notion that an officer may ask for a driver's license in the course of a *Terry* stop to confirm that someone can validly drive on Indiana roads. "A *Terry* stop is a lesser intrusion on the person than an arrest and may include a request to see identification and inquiry necessary to confirm or dispel the officer's suspicions." *Hardister v. State*, 849 N.E.2d 563, 570 (Ind. 2006). Indiana Code section 9-24-1-1 requires any individual driving on Indiana roads to have a valid driver's license or permit issued by a motor vehicle bureau. Furthermore, a "'driver's license' means any type of license or privilege to operate a motor vehicle under the laws of a jurisdiction." Ind. Code § 9-28-2-4. Accordingly, this definition encompasses international driver's licenses, including those from Mexico.

[15] Officer Spicer had the authority to check for a driver's license, like in any other routine traffic stop, to ensure that the driver was properly licensed to operate a

---

[3] Both *Holly* and *Armfield* rely on numerous state supreme and intermediate court decisions from other jurisdictions where there was "evidence or circumstances which indicate that the owner is not the driver of the vehicle." *Holly*, 918 N.E.2d at 326. These cases all point to evidence of clear differences in age, gender, and race as examples of demonstrable proof that the driver was not, in fact, the owner of the vehicle—the person about whom the officer formed the initial reasonable suspicion of engaging in potential criminal activity. *See, e.g., Armfield*, 918 N.E.2d at 321 n.7.

motor vehicle on Indiana roads. *See State v. Quirk*, 842 N.E.2d 334, 340 (Ind. 2006) (holding that "[w]here an officer stops a vehicle for a traffic violation, a request for the driver's license and vehicle registration . . . are within the scope of a reasonable detention[]"); *see also State v. Morris*, 732 N.E.2d 224, 228 (Ind. Ct. App. 2000) (holding that an individual's "failure to produce his license was a circumstance independent of the [] violation, which provided [the officer] with reasonable suspicion that [defendant] might not have a valid driver's license"). Here, because Officer Spicer did not have conclusive evidence to determine that Santiago was not Hernandez and because she had an obligation to ensure that Santiago could legally drive on Indiana roads, it was not impermissible of her to ask for Santiago's driver's license during the *Terry* stop.

[16] Therefore, we hold that Officer Spicer's request to see Santiago's driver's license did not unlawfully prolong the initial purpose of the investigatory traffic stop, and consequently, did not violate the Fourth Amendment to the United States Constitution.

[17] The judgment of the trial court is affirmed.

Najam, J., and Robb, J., concur.