*324 On Petition To Transfer from the Indiana Court of Appeals, No. 49A02-0711-CR-930
RUCKER, Justice.
Damen Holly was stopped by police after a license plate check showed he was driving a vehicle owned by a driver whose license was suspended. Even though Holly himself was not the owner, the stop was permissible under our decision today in Armfield v. State, 918 N.E.2d 316 (Ind., 2009). However, the subsequent search of the vehicle was conducted absent reasonable suspicion and thus violated Holly's Fourth Amendment rights.
Facts and Procedural History
At approximately 11:30 p.m. on January 19, 2007, Officer Jason Ross of the Indianapolis Metropolitan Police Department was conducting a routine patrol in his police car. While traveling southbound on a street in Indianapolis, he ran a license plate check of the vehicle traveling in front of him. The check indicated that the vehicle was registered to an African-American female named Terry Sumler, provided her date of birth, and showed that Sumler's driver's license was suspended. Based upon this information, Officer Ross initiated a traffic stop of the vehicle to identify the driver. He approached the vehicle and observed that the driver (later identified as Damen Holly) was male and that there were two passengers, Sumler and Holly's brother. He asked Holly for a driver's license, which Holly admitted that he did not have. Holly and the other passengers then provided other identifying information. Officer Ross ran additional computer checks and discovered that Holly's license, as well as those of the other passengers, was suspended. He ordered them to exit the vehicle, and directed back-up Officer Hannaford to conduct a search of the vehicle. The search produced a small bag containing what was later confirmed to be marijuana. When questioned at the seene, Holly admitted the marijuana belonged to him.
The State charged Holly with possession of marijuana as a Class A misdemeanor. During his bench trial, Holly moved to suppress the introduction of the marijuana as well as his admission, arguing that the officers lacked reasonable suspicion to search the vehicle after discovering that the driver was not the registered owner. The trial court denied the motion and found Holly guilty as charged.
Holly appealed, and the Court of Appeals reversed. In doing so the court found that Officer Ross lacked reasonable suspicion to initiate the traffic stop because "[a] police officer's knowledge that an owner of a vehicle may not lawfully drive creates reasonable suspicion of criminal activity only where the officer has reason to believe that the owner is actually driving the vehicle" Holly v. State, 888 N.E.2d 338, 343 (Ind.Ct.App.2008) (emphasis in original). Although we also reverse the judgment of the trial court, we do so on grounds slightly different from those of our colleagues. Thus, the State's petition to transfer having been previously granted, the opinion of the Court of Appeals is thereby vacated. Ind. Appellate Rule 58(A).
Discussion
The State contends that a "police officer has reasonable suspicion to stop a vehicle upon learning that the driver's license of the registered owner of the vehicle is suspended." Appellee's Pet. for Trans. at 6. Holly counters by arguing that "the traffic stop of the car he was driving was in violation of law," Br. of Appellant at 4, specifically both the Fourth Amendment *325 to the United States Constitution [1] and its state counterpart, Article I, Section 11 of the Indiana Constitution.[2] See id. at 5-7.
Our companion case, Armfield, which we also decide today, provides the analytical framework to resolve this issue. We held in Armfield that "an officer has reasonable suspicion to initiate a Terry[3] stop when (1) the officer knows that the registered owner of a vehicle has a suspended license and (2) the officer is unaware of any evidence or circumstances which indicate that the owner is not the driver of the vehicle" Armfield, 918 N.E.2d at 321-22.
Here, Officer Ross's license plate check indicated that the vehicle traveling in front of him was registered to an African-American female named Terry Sumler and that Sumler's driver's license was suspended. He testified at trial that the information about the license suspension "led me to stop the vehicle." Tr. at 10. Because it was close to midnight and the vehicle was traveling in front of him for the entire time before the stop, Officer Ross did not have a chance to observe the driver before initiating the stop. Under these cireum-stances, we hold that Officer Ross had reasonable suspicion to initiate an investigatory Terry stop of Sumler's vehicle. However this does not end our inquiry.
The fundamental principle upon which a Terry stop is based is that the officer has reasonable suspicion to believe that criminal activity has occurred or is about to oceur. Or in the words of Terry, that "criminal activity may be afoot." Terry, 392 U.S. at 30, 88 S.Ct. 1868. To be sure, if a license plate check reveals that the driver's license of the vehicle's registered owner has been suspended, then there is reason to believe (a) the registered owner is driving the vehicle, and thus (b) is doing so illegally,. Under those circumstances, in Terry terms, an officer has reasonable suspicion to believe that criminal activity is afoot. But once it becomes apparent that the driver of the vehicle is not the owner then an officer simply has no reason to conduct additional inquiry. An officer has reasonable suspicion to conduct a Terry stop when among other things, "the officer is unaware of any evidence or cireumstances which indicate that the owner is not the driver of the vehicle." Armfield, at 322.
Evidence and circumstances, like facts, are "stubborn things." [4] And the evidence *326 in this case is stubbornly clear that before Officer Ross told Holly to produce his driver's license, Officer Ross knew that Holly was not the owner of the vehicle. In Officer Ross's own words, his license plate check revealed that "the registered owner [of the vehicle] was a black female," Tr. at 20; and Officer Ross acknowledged that when he approached the car Holly (a black male) was in the driver's seat and "was not the same person that was registered to the car." Tr. at 11. It is of no import that Officer Ross had already initiated a lawful stop before he first observed the driver. Reasonable suspicion to pull a car over does not confer unconditional authority to request the driver's license and registration. See 4 Wayne R. LaFave, Search and Seizure § 9.3(c) n. 95 (4th ed. 2004) ("The importance of the violation of law to the authority to run a check on a license and registration is illustrated by those cases holding that if there is a stopping on either reasonable suspicion or probable cause of a traffic violation which is determined immediately after the stop not to have been a violation at all, the officer may not continue the detention for a license/registration check.").
In sum there is simply nothing in this record justifying any further inquiry subsequent to the valid Terry stop. Indeed as we noted in Armfield there are "helpful examples" from other jurisdictions of "evidence or circumstances which indicate that the owner is not the driver of the vehicle." Armfield, at 821 n. 7. See, e.g., State v. Tozier, 905 A.2d 836, 839 n. 1 (Me.2006) ("[If the driver were of a different gender than the owner, the officer would lack reasonable grounds to assume the owner was driving."); People v. Jones, 260 Mich. App. 424, 678 N.W.2d 627, 631 n. 4 (2004) the registered owner was a male and the driver was a female, the officer would not have reasonable grounds to assume that the driver was the owner."). And at least two federal jurisdictions that have addressed the issue offer helpful examples as well. See United States v. Jenkins, 452 F.3d 207, 213 (2d Cir.2006) ("[When police officers stop a vehicle on a reasonable, albeit erroneous, basis and then realize their mistake" they may "approach[ ] the vehicle and apprise[ ] the vehicle's occupants of the situation."); United States v. McSwain, 29 F.3d 558, 561(10th Cir.1994) ("Trooper Avery stopped Mr. MeSwain for the sole purpose of ensuring the validity of the vehicle's temporary registration sticker. Onee Trooper Avery approached the vehicle on foot and observed that the temporary sticker was valid and had not expired, the purpose of the stop was satisfied. Trooper Avery's further detention of the vehicle to question Mr. MeSwain about his vehicle and travel itinerary and to request his license and registration exceeded the seope of the stop's underlying justification.").
In this case Officer Ross had no justification to pursue an investigatory stop that extended to a request to see Holly's identification. The evidence collected as a result of the stop, including the marijuana seized during the search and Holly's subsequent admission that he owned the marijuana, was therefore inadmissible under the Fourth Amendment. The trial court thus erred in admitting the evidence. Accordingly we reverse the judgment of the trial court on this issue.
Conclusion
The judgment of the trial court is reversed and this cause is remanded.
*327 DICKSON and BOEHM, JJ., concur.
SHEPARD, C.J., dissents with separate opinion.
SULLIVAN, J., dissents with separate opinion in which SHEPARD, C.J., joins.

. The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." This provision applies to the states through the Fourteenth Amendment. Krise v. State, 746 N.E.2d 957, 961 (Ind.2001).

. Article I, Section 11 of the Indiana Constitution is nearly identical to the Fourth Amendment and provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized." It is established that "[njotwith-standing the textual similarity of Article 1, § 11 of the Indiana Constitution to that of the federal Fourth Amendment, Section 11 is interpreted separately and independently from Fourth Amendment jurisprudence." State v. Washington, 898 N.E.2d 1200, 1205-06 (Ind.2008) (citing Mitchell v. State, 745 N.E.2d 775, 786 (Ind.2001)). However, because the search here violated Holly's Fourth Amendment rights, we find it unnecessary to resolve his Article I, Section 11 claim.

. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

. "Facis are stubborn things, and whatever may be our wishes, our inclinations, or the dictums of our passions, they cannot alter the state of facts and evidence." David McCullough, John Adams 68 (2001) (quoting John Adams).