# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**JOELLE A. FREIBURGER**
Portland, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOSEPH M. JOHNSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  38A02-1405-CR-340 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE JAY SUPERIOR COURT
The Honorable Max C. Ludy, Jr., Judge
Cause No. 38D01-1401-CM-2

**November 20, 2014**

**OPINION - FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

In this interlocutory appeal, Defendant Joseph M. Johnson ("Johnson") challenges the trial court's denial of his motion to suppress evidence. We reverse and remand.

## Issue

Johnson raises one issue on appeal, which we restate as: whether the trial court erred when it denied Johnson's motion to suppress evidence obtained during an investigatory traffic stop.

## Facts and Procedural History

On December 28, 2013, Jay County Sheriff's Deputy Brad Wendel ("Deputy Wendel") began following a gold van heading north on Highway 1 in Jay County. He ran a registration check and found that the van was registered to Ashley Boyd ("Boyd"). After he requested a driver's license check on Boyd, he discovered that Boyd's license was suspended. Deputy Wendel followed the van for approximately two miles, until he was in a safe area to initiate a traffic stop. During that time, he observed no traffic violations.

After making the stop, Deputy Wendel approached the van and observed a driver, later identified as Johnson, and two passengers, one of which was Boyd. Deputy Wendel stated the reason for the traffic stop: that the van was registered to a suspended driver. Boyd spoke up from the backseat, identified herself as Ashley Boyd, and confirmed her license was suspended. Deputy Wendel later testified that he had no reason to believe that Boyd was lying.

Deputy Wendel then asked Johnson for his driver's license, because he "wanted to confirm that the driver was not Ashley Boyd." (Tr. at 14.) Johnson handed Deputy Wendel an identification card and informed the deputy that his driver's license was also suspended. Deputy Wendel placed Johnson under arrest.

On January 8, 2014, Johnson was charged with Driving While Suspended, a Class A misdemeanor.[1] On February 20, 2014, Johnson filed a motion to suppress all evidence obtained during the traffic stop, which he later amended on March 19, 2014. The trial court held a suppression hearing on March 19, 2014, and that same day, issued an order denying Johnson's motion.

On April 17, 2014, the trial court granted Johnson's motion to certify an interlocutory order to allow an immediate appeal and his motion for a stay of the trial proceedings. This Court accepted jurisdiction over the appeal on June 26, 2014.

**Discussion and Decision**

Standard of Review

Our standard of review for the denial of a motion to suppress evidence is similar to other sufficiency issues. Westmoreland v. State, 965 N.E.2d 163, 165 (Ind. Ct. App. 2012) (citing Jackson v. State, 785 N.E.2d 615, 618 (Ind. Ct. App. 2003), trans. denied). We determine whether substantial evidence of probative value exists to support the court's denial of the motion. Id. We do not reweigh the evidence, and we consider conflicting evidence most favorably to the trial court's ruling. Taylor v. State, 689 N.E.2d 699, 702 (Ind. 1997).

---

[1] Ind. Code § 9-24-19-2 (2013).

However, unlike other sufficiency matters, we must also consider the uncontested evidence that is favorable to the defendant. Westmoreland, 965 N.E.2d at 165.

Analysis

Johnson contends that the trial court erred in denying his motion to suppress evidence obtained during the investigatory traffic stop. He argues that Deputy Wendel's prolonged investigation violated his rights under the Fourth Amendment to the U.S. Constitution and Article 1, Section 11 of the Indiana Constitution,[2] and thus any evidence obtained thereafter must be suppressed.

The Fourth Amendment provides, in relevant part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." Under the exclusionary rule, evidence obtained through an illegal search or seizure is inadmissible at trial. Newby v. State, 701 N.E.2d 593, 602 (Ind. Ct. App. 1998) (citing Mapp v. Ohio, 367 U.S. 643 (1961); Callender v. State, 138 N.E. 817 (Ind. 1923)). The Fourth Amendment applies to the states through the Fourteenth Amendment. Krise v. State, 746 N.E.2d 957, 961 (Ind. 2001) (citing Mapp, 367 U.S. at 650).

The Fourth Amendment's "protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." United States v. Arvizu, 534 U.S. 266, 273 (2002) (citing Terry v. Ohio, 392 U.S. 1, 9 (1968)). A police officer may "stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported

---

[2] Because we hold that Johnson's Fourth Amendment rights were violated, we do not address his Article 1, Section 11 claim.

by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry, 392 U.S. at 30).

"Reasonable suspicion, like probable cause, is a highly fact-sensitive inquiry." Campos v. State, 885 N.E.2d 590, 597 (Ind. 2008). We defer to a trial court's determination of historical fact, but we review *de novo* whether those facts constitute reasonable suspicion. Myers v. State, 839 N.E.2d 1146, 1150 (Ind. 2005). Reviewing courts "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." Arvizu, 534 U.S. at 273 (quoting U.S. v. Cortez, 449 U.S. 411, 417-18 (1981)). Although it is less demanding than probable cause and requires a showing considerably less than a preponderance of the evidence, reasonable suspicion "still requires a minimal level of objective justification and more than an inchoate and unparticularized suspicion or hunch of criminal activity." Ertel v. State, 928 N.E.2d 261, 264 (Ind. Ct. App. 2010), trans. denied.

In Armfield v. State, 918 N.E.2d 316 (Ind. 2009), our Indiana Supreme Court held that a police "officer has reasonable suspicion to initiate a Terry stop when (1) the officer knows that the registered owner of a vehicle has a suspended license and (2) the officer is unaware of any evidence or circumstances which indicate that the owner is not the driver of the vehicle." Id. at 321-22. In Holly v. State, 918 N.E.2d 323 (Ind. 2009), handed down the same day as Armfield, the court held that "once it becomes apparent that the driver of the vehicle is not the owner[,] then an officer simply has no reason to conduct additional inquiry." Id. at 325.

In light of Armfield, Johnson does not challenge the validity of Deputy Wendel's initial investigatory stop. Rather, Johnson contends that after passenger Boyd identified herself as the vehicle's owner, Deputy Wendel became aware of "evidence or circumstances which indicate that the owner is not the driver." Armfield, 918 N.E.2d at 322. Citing Holly, Johnson argues that Deputy Wendel should have ended the traffic stop after Boyd's disclosure because "the reasonable articulable suspicion which initially justified the investigatory stop of [the] vehicle dissipated." (Appellant's Br. at 4.)

In Holly, a police officer conducted an investigatory stop of a car registered to a suspended driver. Id. at 324. Based on a license check, the officer knew that the registered owner was female. Id. However, when the officer approached the car, he immediately saw that the driver, Holly, was a man. Id. The officer then asked Holly for his license, which Holly did not have because it was suspended. Id. Our supreme court observed that before the officer asked Holly for his driver's license, the officer knew Holly was not the registered owner. Id. at 326. The court thus held that the officer "had no justification to pursue an investigatory stop that extended to a request to see Holly's identification." Id. As such, all evidence collected thereafter was inadmissible under the Fourth Amendment. Id.

Despite Holly's factual similarity to this case, the State argues that Johnson's reliance on Holly is "misplaced" because "Deputy Wendel did not have any identifying information regarding 'Ashley Boyd' and could not know that 'Ashley' referred to a female, not a male." (Appellee's Br. at 9.) However, we do not read Armfield or Holly so narrowly as to limit "evidence or circumstances which indicate that the owner is not the driver" to identifying

6

characteristics such as sex.[3]  See Holly, 918 N.E.2d at 326 (including among "helpful examples" of "evidence or circumstances" that would vitiate reasonable suspicion a police officer's realization after stopping a car for an expired registration that the registration sticker was not actually expired).  The Armfield test turns on the "evidence and circumstances" of which the officer is aware, not whether the driver and registered owner are of different sexes.  Armfield, 918 N.E.2d at 322.

At the suppression hearing, Deputy Wendel described his encounter with the van occupants:

> A:      I identified myself.  I advised them the reason I stopped them.  The female subject in the back seat advised that, "I [am] Ashley Boyd and yes I am suspended[."] [. . . .]

(Tr. at 8.)  Deputy Wendel also testified:

> Q:      Did you have any reason to believe that Ashley Boyd was lying to you?
> A:      No.

(Tr. at 13.)  He again testified:

> Q:      Okay.  But as I said before, you had no reason to believe that Ashley Boyd was lying to you?
> A:      No.

(Tr. at 13-14.)

The facts show that before asking for Johnson's identification, Deputy Wendel knew of evidence or circumstances that indicated that the registered owner was not the driver, but a backseat passenger.  By his own testimony, he had no reason to disbelieve Boyd's statement.

---

[3] And of course, a person's perceived gender identity may not always align with his or her sex.  Thus, an officer's knowledge of the suspended registrant's sex prior to conducting an investigatory stop may not be dispositive in all situations.

In other words, he no longer had reasonable suspicion that Boyd was driving while suspended. As such, "there is simply nothing in this record justifying any further inquiry subsequent to the valid Terry stop." Holly, 918 N.E.2d at 326. The deputy's investigation should have ended there.

The State also argues that the deputy "properly asked the driver for identification to ensure that the driver was not Boyd . . . ." (Appellee's Br. at 8.) Deputy Wendel testified that he asked for Johnson's license, rather than Boyd's, because Johnson was the driver:

Q: Why didn't you ask Ashley for identification prior to the driver?
A: Because she wasn't driving.

(Tr. at 14.) The State's argument that it was reasonable for Deputy Wendel to confirm Johnson's identity is precisely the inquiry Holly prohibits. "Reasonable suspicion to pull a car over does not confer unconditional authority to request the driver's license and registration." Holly, 918 N.E.2d at 326. Once Boyd identified herself and Deputy Wendel had no reason to disbelieve her, the deputy had no reasonable suspicion to ask Johnson for his license or otherwise extend the stop. To the extent that Deputy Wendel may have felt he needed to confirm Boyd's truthful statement as to *her* identity, we fail to see how his request to see *Johnson's* driver's license could possibly confirm it.

**Conclusion**

Although the deputy had reasonable suspicion to initiate an investigatory traffic stop, we hold that the officer lacked reasonable suspicion to request Johnson's identification and thus all subsequent investigation violated Johnson's rights under the Fourth Amendment.

8

Accordingly, the trial court erred in denying Johnson's motion to suppress the evidence obtained after Boyd's statement.

Reversed and remanded.

NAJAM, J., and PYLE, J., concur.