# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**ELIZABETH A. BELLIN**
Cohen Law Offices
Elkhart, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW R. FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

CHAD M. McLAIN,          )
                                       )
    Appellant-Defendant,    )
                                       )
        vs.                  )    No. 20A05-1109-CR-480
                                       )
STATE OF INDIANA,       )
                                       )
    Appellee-Plaintiff.     )

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable Olga H. Stickel, Judge
Cause No. 20D04-1010-CM-505

**March 16, 2012**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Chad M. McLain[1] was stopped for failing to activate his turn signal at least two hundred feet before turning. The officer issued a warning ticket and told McLain that he was free to leave. Then the officer asked McLain if he had illegal substances in his car and for McLain's permission to search the car. McLain voluntarily consented to the search of his car and marijuana was discovered. McLain was charged with and convicted of possession of marijuana. On appeal, he claims that the trial court abused its discretion in admitting the marijuana because the search of his car violated his state and federal constitutional guarantees against unreasonable search and seizure. Specifically, he argues that after the traffic stop was completed, the officer's continued questions and search of his vehicle were unconstitutional. Finding no constitutional violations, we affirm.[2]

**Facts and Procedural History**

On the afternoon of September 30, 2010, Elkhart County Police Officer Randy Valderrama was driving west on County Road 142 in Elkhart County. In front of him was a Pontiac Grand Am driven by McLain. Approximately fifty feet before the intersection of County Roads 142 and 13, Officer Valderrama saw the Grand Am's right turn signal come on, and it turned north onto County Road 13. Because McLain failed to activate his turn

---

[1] Based on McLain's signature on the summons," Appellant's App. at 8, and the spelling of his name in the presentence investigation report, we capitalize the "L" in McLain's name.

[2] McLain requests oral argument, which we deny by separate order.

signal two hundred feet prior to turning as required by law,[3] Officer Valderrama activated his emergency lights and stopped the vehicle at the intersection.

Officer Valderrama approached the vehicle on the passenger side. McLain was the only person in the vehicle. Officer Valderrama told McLain why he had been stopped and asked for his license and registration, which McLain produced. Officer Valderrama walked back to his vehicle to check McLain's license and registration. As he did so, he looked back into the Grand Am from the rear and observed that McLain "tensed up his hands on the steering wheel and then looked at the center console." Tr. at 32.

At his patrol car, Officer Valderrama entered McLain's information into the records management system, which indicated that McLain had two "incidences" for possession of marijuana.[4] *Id*. at 33. Officer Valderrama wrote McLain a warning for failure to signal and returned to McLain's vehicle. As a standard safety precaution, Officer Valderrama asked McLain to step to the rear of the car, and he complied. Officer Valderrama gave McLain the warning ticket, returned his license and registration, and asked him if he had any questions. McLain asked him how to obtain a "VIN check." *Id*. at 33-34. Officer Valderrama gave McLain the appropriate phone number and advised him that he was free to leave.[5]

---

[3] "A signal of intention to turn right or left shall be given continuously during not less than the last two hundred (200) feet traveled by a vehicle before turning or changing lanes." Ind. Code § 9-21-8-25.

[4] At the suppression hearing, Officer Valderrama testified that McLain had two previous charges for possession of marijuana, but the records management system did not provide the outcome of those charges. Tr. at 19.

[5] At the suppression hearing, Officer Valderrama described McLain's demeanor as "cooperative," "nice," and not indicating "any nervousness whatsoever." Tr. at 14.

Officer Valderrama then asked McLain whether he had anything illegal in the vehicle. McLain stated that there was not. Officer Valderrama told McLain that he was "curious" because of McLain's two prior "incidences" for possession of marijuana. *Id*. Officer Valderrama asked for McLain's consent to search the vehicle, and McLain said, "I guess if you want to." *Id*. at 34. Officer Valderrama asked McLain if he would step to the front of the vehicle and sit on the front bumper, facing away from Officer Valderrama, and McLain said that he would. As they walked to the front of the car, McLain told Officer Valderrama that "there's a bowl of marijuana on the seat and there's a bag of marijuana in the center console." *Id*. at 35. Officer Valderrama then handcuffed McLain and placed him in the rear of the patrol car and requested assistance from a canine officer.

Officer Valderrama returned to McLain's vehicle and saw a silver and black metal pipe on the seat with a burnt green substance in it that smelled of burnt marijuana. Officer Valderrama opened the center console and found a clear plastic bag containing a leafy plant that smelled like raw marijuana. Officer Valderrama returned to his patrol car and read McLain his *Miranda* rights.

A canine officer arrived. The officer and his dog walked around McLain's car, and then the officer opened the car door and put the dog inside. The dog alerted to the pipe on the seat and the center console. Officer Valderrama then retrieved the pipe and bag, which were found to contain a total of 1.9 grams of marijuana. *Id*. at 40.

The State charged McLain with class A misdemeanor possession of marijuana. McLain filed a motion to suppress any evidence obtained from the search of his car, arguing

4

that the search violated both the federal and state constitutions. Following a hearing, the trial court denied McLain's motion.[6]

On August 3, 2011, a bench trial was held. McLain objected to any evidence obtained after Officer Valderrama told him that he was free to leave, which the trial court overruled. The trial court found McLain guilty as charged. McLain appeals.

## Discussion and Decision

### *Standard of Review*

McLain argues that the trial court erred in admitting the evidence obtained from the search of his vehicle because the search violated his rights under the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. "We will reverse a trial court's ruling on the admissibility of evidence only when the trial court abused its discretion." *Cochran v. State*, 843 N.E.2d 980, 983 (Ind. Ct. App. 2006), *trans. denied*. "An abuse of discretion may occur if a decision is clearly against the logic and effect of the facts and circumstances before the court." *Id.* "When we review a trial court's ruling on the admissibility of evidence resulting from an allegedly illegal search, we do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling." *Reinhart v. State*, 930 N.E.2d 42, 45 (Ind. Ct. App. 2010).

### *I. United States Constitution*

---

[6] The copies of the trial court's order denying McLain's motion to suppress located at the back of McLain's appellant's brief and appellant's appendix are both missing the second page of the order.

The Fourth Amendment to the United States Constitution provides in relevant part, "The right of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated[.]"[7] A traffic stop of a vehicle and temporary detention of its occupants constitutes a "seizure" within the meaning of the Fourth Amendment. *Id.* (citing *Whren v. United States*, 517 U.S. 806, 809-10 (1996)). McLain properly concedes that the initial traffic stop was valid. *See id.* ("It is well settled that police officers may stop a vehicle when they observe minor traffic violations.") (citing *Jackson v. State*, 785 N.E.2d 615, 619 (Ind. Ct. App. 2003), *trans. denied.*). McLain makes no argument that his consent was not voluntary. McLain argues, however, that *after* Officer Valderrama told him that he was free to leave, thereby concluding the valid traffic stop, the Fourth Amendment prohibited Officer Valderrama from asking any further questions unless such questions were based upon a reasonable suspicion of criminal activity. *See Terry v. Ohio*, 392 U.S. 1, 30-31 (1968) (holding that a brief investigatory stop may be justified by reasonable suspicion that the person detained is involved in criminal activity). And, according to McLain, since Officer Valderrama violated his Fourth Amendment rights by asking him about illegal substances in his vehicle and for permission to search it, McLain's consent to search the vehicle is invalid.

McLain's argument is based on the faulty premise that the Fourth Amendment was implicated after Officer Valderrama gave him his license, registration, and the warning

---

[7] The Fourth Amendment's protection against unreasonable searches and seizures extends to the states through the Fourteenth Amendment. *Thayer v. State*, 904 N.E.2d 706, 709 (Ind. Ct. App. 2009).

citation and told him that he was free to leave. At that point, McLain was in fact free to leave, and he was not required to answer the officer's questions. "'Not every encounter between a police officer and a citizen amounts to a seizure requiring objective justification.'" *Powell v. State*, 912 N.E.2d 853, 859 (Ind. Ct. App. 2009) (quoting *Overstreet v. State*, 724 N.E.2d 661, 663 (Ind. Ct. App. 2000), *trans. denied*). "A person is 'seized' only when, by means of physical force or a show of authority, his or her freedom of movement is restrained." *Id.* "The test for whether a reasonable impression existed that the individual was free to leave is 'what a reasonable person, innocent of any crime, would have thought had he been in the citizen's shoes.'" *Woodson v. State*, 960 N.E.2d 224, 227 (Ind. Ct. App. 2012) (quoting *Crabtree v. State*, 762 N.E.2d 241, 245 (Ind. Ct. App. 2002)). "Several factors may be considered in determining whether a reasonable person would not believe he was free to leave, including the presence of multiple officers, the display of a weapon, any physical touching of the person, or the use of a tone of voice by the officer indicating that compliance might be compelled." *Id.*

There is no dispute that Officer Valderrama unequivocally told McLain that he was free to leave and returned McLain's license and registration. After that point, there is no evidence that Officer Valderrama displayed a weapon or restricted McLain's movements, or that the language and tone of Officer Valderrama's questions conveyed to McLain that his compliance would be compelled. Under these circumstances, we conclude that a reasonable person would feel free to leave. In short, the interaction between McLain and Officer Valderrama after the termination of the traffic stop was merely a consensual encounter, in

7

which no Fourth Amendment interest is implicated. *State v. Calmes*, 894 N.E.2d 199, 202 (Ind. Ct. App. 2008); *see also State v. Carlson*, 762 N.E.2d 121, 125 (Ind. Ct. App. 2002) ("'Police questioning, by itself, is unlikely to result in a Fourth Amendment violation. While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response.'") (quoting *INS v. Delgado*, 466 U.S. 210, 216 (1984)).

McLain asserts that "[o]nce the purpose of an initial traffic stop has been completed, an officer cannot further detain the vehicle or its occupants unless something occurred during the traffic stop that generated the reasonable suspicion necessary to justify a further detention." Appellant's Br. at 13-14 (citing *D.K. v. State*, 736 N.E.2d 758, 761 (Ind. Ct. App. 2000)). *D.K.* cannot help McLain because it is no longer good law on this point. The case upon which the *D.K.* court relied, *United States v. Mesa*, 62 F.3d 159 (6th Cir. 1995)), has since been explicitly rejected by the Sixth Circuit based on a 1996 U.S. Supreme Court case.[8] *See United States v. Burton*, 334 F.3d 514, 517 (6th Cir. 2003) (the "*Mesa* court's statement

---

[8] The outdated principle from *D.K.* was also stated in *Harper v. State*, 922 N.E.2d 75, 79-80 (Ind. Ct. App. 2010), *trans. denied*, although it was not the basis for the holding in that case.

[] no longer accurately represents the law.") (citing *Ohio v. Robinette*, 519 U.S. 33 (1996));[9]

*see also United States v. Aguilera-Pena*, 426 F. App'x 368, 370 (6th Cir. 2011) (quoting *Burton*).

In any event, *D.K.* is distinguishable because the defendant refused to consent to a voluntary search, but the officer detained the defendant so that a canine search could be conducted. The *D.K.* court held that under those circumstances, "reasonable suspicion was a necessary predicate to a canine sniff after a traffic stop." 736 N.E.2d at 762. Here, McLain was free to leave and voluntarily gave his consent to search his vehicle. We conclude that Officer Valderrama's questions following the termination of the traffic stop did not impinge upon McLain's Fourth Amendment Rights.[10]

---

[9] In *Robinette*, the United States Supreme Court held that the "Fourth Amendment test for a valid consent to search is that the consent be voluntary and voluntariness is a question of fact to be determined from all the circumstances." 519 U.S. at 39 (quotation marks and citation omitted). In so holding, the Supreme Court rejected the Supreme Court of Ohio's statement that

> "When the motivation behind a police officer's continued detention of a person stopped for a traffic violation is not related to the purpose of the original, constitutional stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some separate illegal activity justifying an extension of the detention, the continued detention constitutes an illegal seizure."

*Id*. at 37-38 (quoting *State v. Robinette*, 653 N.E.2d 695, 696 (Ohio 1995), *rev'd*).

[10] McLain cites *Holly v. State*, 918 N.E.2d 323 (Ind. 2009), to support his argument that Officer Valderrama was required to have reasonable suspicion to ask him additional questions after terminating the traffic stop. *Holly* is inapposite. There, the officer stopped the vehicle because the registered owner of the vehicle had a suspended license. However, when the officer approached the driver's window, the officer saw that the driver of the vehicle was not the owner. The *Holly* court concluded that the initial stop was a valid *Terry* stop. However, the *Holly* court held that once the officer became aware that the driver was not the owner of the car, there was no reasonable suspicion of criminal activity to conduct an inquiry, and therefore the continuation of the stop was constitutionally invalid. *Id*. at 326.

9

## II. Indiana Constitution

McLain also argues that Officer Valderrama's questions and search constituted unreasonable police activity in violation of Article 1, Section 11 of the Indiana Constitution, which provides in relevant part, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated." "Despite the fact that the text of Article I, Section 11 is nearly identical to the Fourth Amendment, Indiana courts interpret and apply it 'independently from federal Fourth Amendment jurisprudence.'" *Powell*, 912 N.E.2d at 863 (quoting *Mitchell v. State*, 745 N.E.2d 775, 786 (Ind. 2001)). The search and seizure provision of the state constitution must receive a liberal construction in its application to guarantee the people against unreasonable search and seizure. *Herbert v. State*, 891 N.E.2d 67, 70 (Ind. Ct. App. 2008), *trans. denied* (2009). Although McLain comes close to waiving his state constitutional argument by weaving it into his Fourth Amendment argument, we will address it.

> The legality of a governmental search under the Indiana Constitution turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances. The totality of the circumstances requires consideration of both the degree of intrusion into the subject's ordinary activities and the basis upon which the officer selected the subject of the search or seizure. Although there may be other relevant considerations under the circumstances, the reasonableness of a search or seizure turns on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs.

*Cochran v. State*, 843 N.E.2d 980, 985 (Ind. Ct. App. 2006) (citations and quotation marks omitted), *trans. denied*. "Generally, a search warrant is a prerequisite to a constitutionally

proper search and seizure." *Ammons v. State*, 770 N.E.2d 927, 931 (Ind. Ct. App. 2002) *trans. denied*. "In cases involving a warrantless search, the State bears the burden of proving an exception to the warrant requirement." *Id*. "A valid consent to search is an exception to the warrant requirement." *Id*. at 933. "The theory underlying this exception is that, when an individual gives the State permission to search either his person or property, the governmental intrusion is presumably reasonable." *Id.* We reiterate that McLain does not contest the voluntariness of his consent to search his vehicle.

Although not cited by either party, *Callahan v. State*, 719 N.E.2d 430 (Ind. Ct. App. 1999), appears to be dispositive. There, an officer stopped Callahan for driving with improperly tinted windows. The officer issued a warning ticket to Callahan for the window violation and told Callahan that he was free to go. Then, the officer asked Callahan if he would like to step out of the vehicle to stretch his legs. Callahan exited the vehicle, and they began a conversation during which the officer told Callahan that he was a drug interdiction officer traveling with a canine unit and asked Callahan if he could search his vehicle for weapons and narcotics. Callahan gave him permission to search. The officer found thirteen pounds of marijuana, and Callahan was ultimately convicted of dealing in marijuana.

On appeal Callahan argued that "Article I, section 11 should be interpreted to require independent reasonable suspicion of some illegal activity apart from the traffic stop in order for an officer to even seek consent to search" and "that even though the initial stop was reasonable, Officer Hahn's continued contact with him after the purpose of the stop was completed was unreasonable without such independent reasonable suspicion of illegal

11

activity." *Id*. at 437. This Court rejected Callahan's argument that the state constitution required a police officer to have reasonable suspicion of illegal activity before asking permission to search after the termination of a valid traffic stop. Our Court concluded,

> Callahan clearly and voluntarily consented to the search of his vehicle even after being told that he was free to go and that he did not have to cooperate with the officer.[11] Thus, the State met its burden of proving an exception to the warrant requirement which rendered an otherwise unreasonable search presumably reasonable.

*Id*. at 439. *See also State v. Washington*, 898 N.E.2d 1200, 1207 (Ind. 2008) (affirming principle that Article 1, Section 11 does not generally prohibit police from questioning motorists or seeking consent to search following a terminated traffic stop).

Like Callahan, McLain clearly and voluntarily consented to the search of his vehicle even after being told that he was free to go. Therefore, we conclude that Article 1, Section 11 was not violated by Officer's Valderrama's conduct following the termination of the traffic stop.[12]

Based on the foregoing, we conclude that the trial court did not abuse its discretion in admitting evidence obtained from the search of McLain's vehicle. Therefore, we affirm his conviction for possession of marijuana.

Affirmed.

---

[11] We observe that a voluntary consent to search a vehicle may be obtained without an advisement regarding the right to refuse consent, although it is one factor that may be considered in assessing the voluntariness of consent under the totality of the circumstances. *Ammons*, 770 N.E.2d at 934 (citing *State v. Scheibelhut*, 673 N.E.2d 821, 824 (Ind. Ct. App. 1996)).

[12] McLain contends that his case is closely related to *State v. Quirk*, 842 N.E.2d 334 (Ind. 2006). We disagree. Quirk *denied* the police permission to search the cabin of his tractor-trailer. The police allowed Quirk to leave, but then followed him to a rest area and detained his trailer until a canine unit arrived and searched the cabin. The facts in *Quirk* are nothing like those in this case.

12

MAY, J., and BROWN, J., concur.