

**FILED**

May 10 2018, 9:02 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Mark J. Dove
R. Patrick Magrath
Alcorn Sage Schwartz &
Magrath, LLP
Madison, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| State of Indiana, <br> *Appellant-Plaintiff,* <br><br> v. <br><br> Larry O. Janes, <br> *Appellee-Defendant.* | May 10, 2018 <br><br> Court of Appeals Case No. <br> 40A01-1706-CR-1328 <br><br> Appeal from the Jennings Circuit Court <br><br> The Honorable Jon W. Webster, Judge <br><br> Trial Court Cause No. <br> 40C01-1605-F2-5 |

**Bailey, Judge.**

[1] The State appeals the trial court's suppression of evidence found during a search of Larry Janes's vehicle, arguing that the trial court erred by finding that because a *Pirtle*[1] warning was not given, suppression was warranted. Finding no error, we affirm.

## Facts[2]

[2] In the early morning of May 17, 2016, Janes and a passenger drove past Jennings County Sheriff's Department Reserve Deputy Jason Littrell on a rural road. Deputy Littrell observed that Janes failed to dim his headlights. Deputy Littrell followed Janes's vehicle for a minute so he could stop Janes in a well-lit area; during this time, the deputy observed Janes slow down so that he was driving under the posted speed limit, turn on his turn signal well before an intersection, stop well in front of the white line at the intersection, make a wide turn at the intersection, and drive on the emergency portion of the road.

[3] Once Deputy Littrell stopped the vehicle and approached Janes, he advised Janes why he stopped him, and Janes admitted that he did not dim his headlights for approaching traffic. Deputy Littrell observed that Janes was nervous and would not make eye contact with him, and when the deputy requested his driver's license, Janes initially handed him a bank card. This

[1] *Pirtle v. State*, 263 Ind. 16, 323 N.E.2d 634 (1975).

[2] We heard oral argument at Lawrenceburg High School on April 13, 2018. We thank the school's administration, faculty, and students, and the Dearborn County Bar Association, for their gracious hospitality. We also thank counsel for their informative and engaging oral advocacy and subsequent discussion with the students.

behavior, coupled with what the deputy had observed while following Janes, made Deputy Littrell suspect that Janes was impaired. He then requested additional officers to assist at the scene.

[4] Deputy Heilers and Sergeant Ritchie arrived shortly thereafter. Sergeant Ritchie testified that when he arrived, he "mentioned that [he] heard a lot of information about Larry Janes being involved in the drug world" or "with methamphetamine." Tr. Vol. II p. 78. After Deputy Littrell ran Janes's license, which came back clean, he returned to Janes's vehicle on the driver's side, while Deputy Heilers approached the vehicle on the passenger's side. Deputy Littrell gave Janes a verbal warning for failure to dim his headlights. He then turned and stepped toward his patrol car. Deputy Littrell testified that he then "went back to the driver's door and asked the driver if he would give consent to search the vehicle due to us trying to clean the streets up and recover stolen items and such." Id. at 13. Deputy Littrell testified that Janes consented and then "I advised him if he agreed to giving us consent to search the vehicle, I asked him and the passenger to open the door and step out and walk to the rear of his vehicle and the front of mine and stand with Sargent [sic] Ritchie." Id. Janes and the passenger complied.

[5] Deputy Littrell's body camera recorded their exchange:

> Deputy Littrell: All right, Larry, here's your ID back. Like you said, you know why I pulled you over, right?
>
> Janes: Yeah, it won't happen again (inaudible) one thing (inaudible) hard to see anyway.

Deputy Littrell: All right, you had anything to drink tonight, anything like that?

Janes: No sir.

Deputy Littrell: No.

Janes: No.

Deputy Littrell: Okay.

Janes: None.

Deputy Littrell: All right, well, I mean nothing illegal in the car?

Janes: Nothing.

Deputy Littrell: No.

Janes: Nope.

Deputy Littrell: Would you give us a chance to look in there?

Janes: Yes, you can look.

Deputy Littrell: Okay, well, if you'll give us a consent to look, if you guys want to come out here for us, we'll take a look real quick. No guns, knives, weapons, nothing like that?

Appellant's Ex. 1 (partially transcribed at tr. vol. II p. 45-46).

[6] Deputies Littrell and Heilers then searched the vehicle. Deputy Heilers found a methamphetamine pipe underneath the passenger seat. At some point during the stop, Janes told Deputy Littrell several times that the vehicle was not his. After the deputies found the pipe, they handcuffed Janes and the passenger. The deputies also discovered methamphetamine in the vehicle's trunk and the passenger's purse.

[7] On May 26, 2016, the State charged Janes with Level 2 felony dealing in methamphetamine, Level 3 felony possession of methamphetamine, and Level 4 felony unlawful possession of a firearm by a serious violent felon. On December 13, 2016, Janes filed a motion to suppress all the evidence seized during the vehicle search, alleging that the vehicle search violated the federal and Indiana constitutions because no exception to the warrant requirement applied to the stop.

[8] A suppression hearing took place on March 8 and May 9, 2017. Janes testified that the deputy had asked whether "they could look in" his vehicle, and that Janes had replied affirmatively, thinking that the deputy had wanted to "shine his flashlight through the window into the back seat and floorboards while we was sitting in the car." Tr. Vol. II p. 61-62. Janes also testified that he had told the deputy several times that the vehicle was not his and that he could not give him permission to search it. Janes further testified that at no point did any of the officers tell him that he was free to go, and that at no point did he feel free to leave.

On May 31, 2017, the trial court granted the motion to suppress, making the following findings:

> 5.) Because Littrell was aware Defendant "may have been involved in the drug trade", and after Littrell returned Defendant's license to him, Littrell then asked Defendant if he could "look in there". Defendant said yes, and Littrell then asked Defendant and the passenger to get out of the car. After looking inside the vehicle, Heilers found a "methamphetamine smoking device" under the passenger seat and upon further search, other contraband.

> 6.) According to Littrell, Defendant never withdrew his consent but he did tell Littrell the vehicle wasn't his.

> 7.) The question in this case requires a primary analysis of whether Defendant was or was not in custody at the time he allegedly consented to a search of the vehicle, because, whether *Pirtle* is required, depends on this answer.

> ***

> 9.) . . . Here, the facts were that three (3) uniformed officers in marked cars, with lights flashing, were on the scene of an infraction traffic stop, at least one on each side of the vehicle. Officer Littrell had completed the reason for his stop, but based on his own knowledge of Defendant's reputation, decided to extend his investigation. The Court can only assume what would have occurred had Defendant driven off. Based on the totality of the circumstances, the Court finds Defendant was in custody when Littrell asked if he could "look in there". Therefore, *Pirtle* warnings were required and were not given, and the fruits of the search of the vehicle are suppressed.

Appealed Order p. 2-3 (footnote omitted). On June 28, 2017, the State filed a motion to dismiss the charges based on the trial court's order, and on July 6, 2017, the trial court granted that motion. The State now appeals the trial court's order suppressing the evidence.

## Discussion and Decision

[10] The State argues that the trial court erred by suppressing evidence because Janes was not in custody for purposes of *Pirtle* and was not entitled to a *Pirtle* warning before a consensual search during a traffic stop.[3]

[11] When reviewing a trial court's ruling on a motion to suppress evidence, we must determine whether substantial evidence of probative value supports the trial court's decision. *State v. Seidl*, 939 N.E.2d 679, 683 (Ind. Ct. App. 2010). Where a trial court grants a motion to suppress, the State appeals from a negative judgment and must show that the trial court's grant of the motion was contrary to law. *Id.* We will reverse a negative judgment only when the evidence is without conflict and all reasonable inferences lead to a conclusion opposite that of the trial court. *Id.* We will not reweigh the evidence nor judge witnesses' credibility, and will consider only the evidence most favorable to the trial court's ruling. *Id.*

---

[3] Although Janes moved to suppress the evidence under the federal and Indiana constitutions, the trial court granted Janes's motion based on the Indiana constitution. Therefore, we will discuss the issue only under Indiana law.

Pursuant to the Indiana constitution, our Supreme Court held that "a person who is asked to give consent to search while in police custody is entitled to the presence and advice of counsel prior to making the decision whether to give such consent." *Pirtle v. State*, 263 Ind. 16, 29, 323 N.E.2d 634, 640 (1975). When a person does not receive this warning, "whether the evidence must be suppressed turns on whether the defendant was in custody at the time consent was requested." *Meredith v. State*, 906 N.E.2d 867, 873 (Ind. 2009). In distinguishing between custodial encounters, where *Pirtle* applies, and non-custodial encounters, where it does not, the ultimate inquiry is whether there was a formal arrest or a restraint on freedom of movement of the degree associated with a formal arrest. *Id.* "In answering this question, courts consider all circumstances surrounding the encounter and 'largely appl[y] an objective test asking whether a reasonable person under the same circumstances would believe that she was under arrest or not free to resist the entreaties of the police.'" *Id.* (quoting *Jones v. State*, 655 N.E.2d 49, 55 (Ind. 1995)).

Courts have considered a variety of factors in determining whether an encounter is custodial. One such factor is whether a reasonable person in the defendant's position would feel free to leave. *Id.* The law is clear that in the context of a traffic stop a person is, at least temporarily, not free to leave, but that does not necessarily mean that a traffic stop is custodial. *Id.* Indeed, an officer making a traffic stop may detain a person upon reasonable suspicion of criminal activity and ask questions to verify or disprove his suspicions. *Id.* Ordinarily, such detention is not considered custodial even though the person is

not free to leave. *Id.* Thus, courts must look to other factors as well to determine whether and when a traffic stop transforms into a custodial encounter. Other relevant factors include whether the defendant was read his *Miranda*[4] rights, handcuffed, restrained in any way, or told that he was a suspect in a crime; the vigorousness of the law enforcement interrogation; whether police suggested the defendant should cooperate, implied adverse consequences for noncooperation, or suggested that the defendant was not free to go about his business; and the length of the detention. *Id.* at 874.

[14] Here, the State argues that because Janes was detained for a traffic stop, he was not in custody when he consented to the search and a *Pirtle* warning was not required. Viewed most favorably to the trial court's decision, the record shows that three uniformed officers in three separate police cars with flashing lights came to a traffic stop on a rural highway in the middle of the night. When Deputy Littrell returned Janes's license to him, he stood on the vehicle's driver's side, while Deputy Heilers stood on the passenger's side. In our view, a person who is stopped for a minor traffic violation for which there was an unusually high number of responding officers and whose vehicle is then surrounded by two police officers might reasonably feel that his freedom of movement was restrained.

---

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[15] Moreover, the record also shows that after Deputy Littrell completed the traffic stop by giving Janes a verbal warning for failure to dim his headlights, he then asked Janes whether he had had anything to drink that night, whether there was anything illegal in the vehicle, and whether there were any guns, knives, or other weapons in the vehicle. A reasonable person, asked incriminating questions about alcohol consumption, illegal items, and weapons—questions unrelated to the reason for the traffic stop—could reasonably conclude that he was not free to deny police permission to search his car. *See Sellmer v. State*, 842 N.E.2d 358, 364 (Ind. 2006) (noting that a reasonable person, asked repeatedly about whether there were drugs in the vehicle, "might well conclude either that he or she was under arrest or, at least, that she was not free to deny police permission to search her car").

[16] The trial court, which was in the best position to weigh the evidence and judge witnesses' credibility, found that Janes was in custody when he was asked to consent to a search of his vehicle. We agree that, considering the totality of the circumstances, a reasonable person would not feel free to leave this scene. As a result, Janes was entitled to a *Pirtle* warning, which he did not receive. Accordingly, the trial court did not err by suppressing the evidence found in the search.

[17] The judgment of the trial court is affirmed.

May, J., and Altice, J., concur.