## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 31 2018, 6:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy
Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Kristin Szczerbik
Deputy Public Defender
Lawrence County Public Defender
Agency
Bedford, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| State of Indiana, *Appellant-Plaintiff,* | December 31, 2018 |
| v. | Court of Appeals Case No. 18A-CR-1091 |
| | Appeal from the Lawrence Superior Court |
| Dylan S. Woolston, *Appellee-Defendant.* | The Honorable William G. Sleva, Judge |
| | Trial Court Cause No. 47D02-1709-F6-1376 |

**Robb, Judge.**

# Case Summary and Issue

[1] After Dylan Woolston was stopped for a traffic violation, Officer Clay Blackburn conducted a warrantless search of Woolston's vehicle and discovered methamphetamine. The State charged Woolston with possession of methamphetamine, a Level 6 felony, and Woolston moved to suppress the evidence. The trial court granted the motion and the State now appeals. This case presents one issue for our review: whether the trial court's ruling on Woolston's motion is contrary to law. Concluding it is, we reverse.

# Facts and Procedural History

[2] On the night of September 9, 2017, Officer Blackburn of the Mitchell Police Department initiated a traffic stop of Woolston's vehicle due to an unilluminated license plate. Officer Blackburn turned on his vehicle's light bar to effect the stop and approached Woolston's vehicle. Woolston provided Officer Blackburn with his license but was not able to locate his vehicle registration. Officer Blackburn returned to his car for several minutes to verify Woolston's information, then walked back to Woolston's vehicle, returned his license, and informed Woolston he was going to give him a warning.

[3] After issuing the warning, Officer Blackburn began to walk back to his vehicle. Officer Blackburn only took several steps, however, before he stopped, turned around, and re-approached Woolston's window. Officer Blackburn asked Woolston if he could speak with him further and Woolston agreed. Officer

Blackburn then asked Woolston "if there was anything inside the vehicle that [he] needed to know about[,]" to which Woolston responded that he just got off work. Transcript, Volume I at 6. Officer Blackburn then asked if there were any illegal drugs in the car and Woolston responded "no" while he lit a cigarette. *Id*. Officer Blackburn asked to search Woolston's car and then confirmed with Woolston that he could search it; Woolston stated "[n]o, go ahead. You can." *Id*. at 7. Woolston was instructed to stand with another officer near the back of the vehicle while Officer Blackburn conducted the search. Officer Blackburn found a green plastic container with a plastic baggie inside containing a "crystal like substance[,]" which later tested positive for methamphetamine. *Id.* at 19. Woolston was arrested and transported to jail.

[4] On September 11, the State charged Woolston with possession of methamphetamine, a Level 6 felony. Woolston subsequently moved to suppress "all statements made, items seized, and observations and statements made during the illegal stop and search" of his vehicle under the Fourth and Fourteenth Amendments to the United States Constitution, and Article 1, section 11 of the Indiana Constitution. Appellant's Appendix, Volume 2 at 22. The trial court held a suppression hearing on January 9, 2018, during which Woolston testified that he believed the stop was over and he was free to go after

Officer Blackburn returned his license and notified him of the warning.  The trial court granted Woolston's Motion to Suppress and the State now appeals.[1]

# Discussion and Decision

## I.  Standard of Review

Our standard of review of a trial court's ruling on a motion to suppress is similar to other sufficiency issues and we evaluate whether there is "substantial evidence of probative value that supports the trial court's decision."  *State v. Quirk*, 842 N.E.2d 334, 340 (Ind. 2006).   On review, we do not reweigh the evidence or judge the credibility of the witnesses.  *State v. Janes*, 102 N.E.3d 314, 317 (Ind. Ct. App. 2018), *trans. denied*.  When a trial court grants a motion to suppress, the State appeals from a negative judgment and must show that the trial court's ruling on the motion to suppress was contrary to law.  *Id*.  This court will reverse a negative judgment only when the evidence is "without conflict and all reasonable inferences lead to a conclusion opposite that of the trial court."  *State v. Estep*, 753 N.E.2d 22, 25 (Ind. Ct. App. 2001).  The ultimate determination on the constitutionality of a search is a legal conclusion which we review de novo.  *McIlquham v. State*, 10 N.E.3d 506, 511 (Ind. 2014). The trial court did not make findings of fact in its order granting Woolston's

---

[1] The State appeals the trial court's suppression of the evidence which ultimately prevents further prosecution of Woolston.  Ind. Code § 35-38-4-2(5).

motion, thus we presume the trial court found in Woolston's favor on state and federal constitutional grounds.[2] *State v. Washington*, 898 N.E.2d 1200, 1203 (Ind. 2008). Although the Fourth Amendment and Article 1, section 11 of the Indiana Constitution are nearly identical, we analyze alleged violations "independently and differently." *Austin v. State*, 997 N.E.2d 1027, 1034 (Ind. 2013).

## II. Fourth Amendment

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The protections afforded in the Fourth Amendment extend to the states through the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 649 (1961). A traffic stop constitutes a "seizure" of a person within the meaning of the Fourth Amendment and is reasonable when an officer has probable cause to believe a traffic violation offense occurred. *Whren v. United States*, 517 U.S. 806, 809 (1996).

---

[2] Accordingly, we discuss each argument under the state and federal constitutions formulated on appeal.

[8]     The State challenges the trial court's grant of Woolston's motion to suppress and argues Woolston was not illegally detained when he answered Officer Blackburn's questions and consented to the search of his vehicle because an officer is permitted to briefly ask questions about possible contraband and request consent to search during a traffic stop as they "do not 'measurably extend the duration of the stop.'" Brief of Appellant at 10 (quoting *Arizona v. Johnson*, 555 U.S. 323, 333 (2009)). Woolston contends he was unlawfully detained as the underlying purpose of the stop concluded when Officer Blackburn returned Woolston's license and issued a warning. Because Officer Blackburn "had already handled the matter for which the stop was made[,]" Woolston argues that the only purpose in Officer Blackburn's re-approaching the vehicle and questioning Woolston was to "unnecessarily prolong [Woolston's] continued detention." Brief of Appellee at 8.

[9]     In *Rodriguez v. United States*, the Supreme Court held the "tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'–to address the traffic violation that warranted the stop and attend to related safety concerns." 135 S.Ct. 1609, 1614 (2015) (internal citation omitted). A seizure remains lawful so long as the officer's unrelated questions do not measurably extend the duration of the stop. *Id*. at 1615. In conducting a traffic stop, an officer's mission includes "ordinary inquiries incident to [the traffic] stop[,]" such as checking the driver's license, determining whether there are any outstanding warrants for the driver, and verifying the vehicle registration and proof of insurance. *Id*. (alterations in original). Although an

officer may conduct unrelated checks during a lawful traffic stop, he or she may not do so in a manner that prolongs the stop, without "reasonable suspicion ordinarily demanded to justify detaining an individual." *Id*.

[10] The State asserts that "[a]ny continuing detention must be viewed as a part of the traffic stop because the only circumstances suggesting detainment were components of the traffic stop[,]" namely the officers, emergency lights, and Woolston's location. Br. of Appellant at 10. However, an officer's "[a]uthority for the seizure . . . ends when tasks tied to the traffic infraction are–or reasonably should have been–completed." *Rodriguez*, 135 S.Ct. at 1615. Thus, Officer Blackburn's authority to detain Woolston ceased, absent reasonable suspicion, after he addressed the underlying purpose of the stop, i.e. when he returned Woolston's driver's license and issued the verbal warning.

[11] The fact that Officer Blackburn stepped away from Woolston's vehicle—even momentarily—supports the conclusion that the stop was over. Officer Blackburn conceded at trial that Woolston was "free to leave after the business of the stop" concluded and Woolston could have driven away if he wanted to. Tr., Vol. I at 17. Officer Blackburn stated that it was "[a]fter the stop was over" that he asked Woolston if he could continue to speak with him, *id*. at 6, and admitted the traffic stop was over when he re-engaged with Woolston, *see id*. at 22. Therefore, once the seizure ended, Officer Blackburn needed reasonable suspicion to re-engage Woolston. Rather than arguing Officer Blackburn had reasonable suspicion to detain Woolston, however, the State argues that if this

court were to find the stop had concluded, the subsequent conversation between Officer Blackburn and Woolston was consensual.

[12] "A consensual encounter that does not implicate the Fourth Amendment occurs when an officer approaches an individual to make a casual and brief inquiry and the individual remains free to leave." *Woodson v. State*, 960 N.E.2d 224, 227 (Ind. Ct. App. 2012). To determine whether a consensual encounter occurred, we ask whether a reasonable person would have believed he or she could disregard the police and "go about his or her business." *Rutledge v. State*, 28 N.E.3d 281, 288 (Ind. Ct. App. 2015). This is an objective test, "not whether the particular citizen actually felt free to leave, but 'whether the officer's words and actions would have conveyed that to a reasonable person.'" *Id.* (citation omitted). A reasonable person may believe he or she is no longer free to leave due to the threatening presence of multiple officers, display of a weapon by an officer, physical touching of the person, use of language or tone of voice indicating compliance may be compelled, *Clark v. State*, 994 N.E.2d 252, 261-62 (Ind. 2013), or an accusation of criminal activity, *Baxter v. State*, 103 N.E.3d 1180, 1188 (Ind. Ct. App. 2018). And "[w]hat constitutes a restraint on liberty prompting a person to conclude that he is not free to 'leave' will vary depending upon the particular police conduct at issue and the setting in which the conduct occurs." *Rutledge*, 28 N.E.3d at 289.

[13] In its brief to the trial court, the State claimed the facts of this case to be analogous to the facts in *McLain v. State,* 963 N.E.2d 662 (Ind. Ct. App. 2012), *trans. denied*. *See* Appellant's App., Vol. 2 at 41. On appeal, the State cites this

decision to support its argument that a consensual encounter occurred, arguing "this Court found a consensual encounter and voluntary consent to search occurred following a traffic stop because the Defendant was aware that he was free to go." Reply Brief of Appellant at 7.

[14]     In *McLain*, an officer pulled the defendant over for a traffic violation, issued a warning ticket, returned the defendant's license and registration, and asked if he had any questions. After advising the defendant he was free to leave, the officer asked if the defendant had anything illegal in his car. The defendant replied he did not and the officer stated he was curious given defendant's prior charges for possession of marijuana. The officer then asked for consent to search the defendant's vehicle, to which the defendant responded, "I guess if you want to." *Id*. at 665. This court held that the Fourth Amendment was not implicated after the officer returned the license, registration, issued the ticket, and informed the defendant he was free to leave. We stated "[a]t that point, [the defendant] was in fact free to leave, and he was not required to answer the officer's questions." *Id*. at 667. We concluded:

> There is no dispute that [the officer] unequivocally told [the defendant] that he was free to leave and returned [his] license and registration. After that point, there is no evidence that [the officer] displayed a weapon or restricted [the defendant's] movements, or that the language and tone of [the officer's] questions conveyed to [the defendant] that his compliance would be compelled. Under these circumstances, we conclude that a reasonable person would feel free to leave. In short, the interaction between [the defendant] and [the officer] after the termination of the traffic stop was merely a consensual

encounter, in which no Fourth Amendment interest is implicated. *State v. Calmes*, 894 N.E.2d 199, 202 (Ind. Ct. App. 2008); *see also State v. Carlson*, 762 N.E.2d 121, 125 (Ind. Ct. App. 2002) ("'Police questioning, by itself, is unlikely to result in a Fourth Amendment violation. While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response.'") (quoting *INS v. Delgado*, 466 U.S. 210, 216, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984)).

*Id*. at 667.

[15] The State asserts the following facts support a consensual encounter: Officer Blackburn gave Woolston his license back and issued a warning; he stepped away from the car before re-approaching; nothing physically restrained or impeded Woolston's car from leaving; Officer Blackburn sought permission to continue speaking with Woolston; Officer Blackburn spoke in a normal tone of voice, did not draw his weapon, and did not touch or restrain Woolston; two officers were present but no evidence suggests the second officer approached Woolston's car; and Woolston remained in his car and lit a cigarette during the conversation.

[16] These facts distinguish this case from cases in which this court has found a non-consensual encounter implicating the Fourth Amendment, which have involved use of authority to control, order, or restrain the defendant's freedom. *See Clark v. State*, 994 N.E.2d 252, 263 (Ind. 2013) (no consensual encounter once an officer "employed his authority to control and restrict [three men's] freedom to depart" by ordering them to sit on the ground and identify themselves); *State v.*

*Scott*, 966 N.E.2d 85, 90 (Ind. Ct. App. 2012) (holding an initially consensual encounter lost its consensual nature when an officer retained the defendant's license and continued to question him), *trans. denied*; *Woodson v. State*, 960 N.E.3d 224, 227-28 (Ind. Ct. App. 2012) (no consensual encounter when an officer handcuffed the defendant for being "loud" and "belligerent" absent any threat and prior to obtaining information about the defendant); *Crabtree v. State*, 762 N.E.2d 241, 245-46 (Ind. Ct. App. 2002) (a reasonable person would not feel free to leave when an officer shines a flashlight on that person and orders him to "get your hands up"). Officer Blackburn did not exercise his authority to control, order, or restrain Woolston's freedom. We therefore agree with the State and conclude this was a consensual stop and the Fourth Amendment was not implicated.[3]

---

[3] At this point, we pause briefly to express our concern with the facts presented. Officer Blackburn testified that several indicators raised his suspicion "that there was something inside the vehicle [Woolston] didn't want [him] to know about": Woolston lit a cigarette and his hand was shaking when he provided his license, indicators of nervousness. Tr., Vol. I at 16. Although Woolston was free to decline Officer Blackburn's request, we note that had Woolston done so, this likely would have only further raised Officer Blackburn's suspicion that Woolston was, in fact, hiding something in his vehicle, potentially forming the basis for Officer Blackburn's continued questioning anyway. We therefore take this opportunity to remind both officers and the public alike that the exercise of one's right to refuse to answer police questioning or the right to refuse a search cannot form the sole basis for reasonable suspicion or probable cause. *See, e.g.*, *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000) ("refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure").

# III. Article 1, Section 11

## A. Was Woolston Unlawfully Detained?

[17] The State asserts that Officer Blackburn's questioning and request for consent to search did not violate Article 1, section 11 of the Indiana Constitution. It states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

[18] An analysis under this provision requires that we focus on whether the officer's conduct was reasonable in light of the totality of the circumstances. *Powell v. State*, 912 N.E.2d 853, 863 (Ind. Ct. App. 2009). In conducting this determination, we balance: (1) the degree of concern, suspicion, or knowledge that a violation has occurred; (2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities; and (3) the extent of law enforcement needs. *Id*.

[19] The State argues that Officer Blackburn's brief questioning and request for consent is proper based on our supreme court's clarification of *State v. Quirk*, 842 N.E.2d 334 (Ind. 2006), in *State v. Washington*, 898 N.E.2d 1200 (Ind. 2008). In *Quirk*, the supreme court affirmed the trial court's judgment granting a defendant's motion to suppress under the Indiana constitution. There, an

officer stopped Quirk for a traffic violation, issued a warning ticket, and informed him he was free to go. The officer then approached his patrol car and another officer on the scene informed him of Quirk's criminal history, which included multiple entries for possible drug trafficking. The officer called to Quirk and stated he wanted to ask a few more questions. Quirk complied and got into the officer's vehicle where the officer asked questions related to whether Quirk was carrying any illegal substances. He then asked to search the trailer portion of the Quirk's truck. Quirk consented. Although the search did not reveal any illegal substances, the officer asked Quirk for consent to search the cabin of the trailer. Quirk declined and was permitted to leave. Quirk then drove to a rest area and went inside the facility. When Quirk exited the facility, officers notified him he was free to leave but his truck would have to remain. Twenty minutes later, officers with a canine unit arrived and a dog alerted the officers to the presence of a controlled substance upon circling the truck. A subsequent search revealed cocaine in the cabin and Quirk was arrested.

[20] Finding Quirk's detention to be prolonged beyond the time necessary to issue the warning and therefore unreasonable, the court affirmed the trial court's decision to suppress the evidence and later clarified in *Washington* that the issue was "the reasonableness of the temporary seizure of the truck, not that of any police question put to the driver." *Washington*, 898 N.E.2d at 1207. The State asserts that "*Washington*'s clarification shows that the brief questioning at the end of the traffic stop in *Quirk* – which was very similar to the questioning here – was not a basis for suppression." Reply Br. of Appellant at 6.

Moreover, our supreme court held in *Washington* that an officer's questioning and request for consent to search after a terminated traffic stop is generally not prohibited by Article 1, section 11 of the Indiana Constitution. 898 N.E.2d at 1207. Although the questioning is not prohibited by our state constitution, we evaluate whether Officer Blackburn's conduct was reasonable under the totality of the circumstances by balancing three factors. *Powell*, 912 N.E.2d at 863. In conducting this determination, we balance: (1) the degree of concern, suspicion, or knowledge that a violation has occurred; (2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities; and (3) the extent of law enforcement needs. *Id.* We construe the constitutional provision liberally so as to guarantee the rights of people against unreasonable searches and seizures. *Mundy v. State*, 21 N.E.3d 114, 118 (Ind. Ct. App. 2014).

There is no dispute as to the validity of the initial traffic stop. This court upheld an officer's questioning and request for consent to search the defendant's vehicle after the officer advised him he was free to go. *McLain*, 963 N.E.2d at 670. In *McLain*, the court relied on *Callahan v. State*,[4] a case in which we rejected the defendant's argument "that the state constitution required a police officer to have reasonable suspicion of illegal activity before asking permission to search after the termination of a valid traffic stop." *McLain*, 963 N.E.2d at 669. Regardless, the degree of concern, suspicion, or knowledge Officer

---

[4] 719 N.E.2d 430 (Ind. Ct. App. 1999).

Blackburn had was extremely low. Officer Blackburn testified that Woolston exhibited signs of nervousness, which led him to believe Woolston was hiding something. "Because it is not at all unusual that a citizen may become nervous when confronted by law enforcement officials, other evidence that a person may be engaged in criminal activity must accompany nervousness before the nervousness will evoke suspicion necessary to support detention." *Quirk*, 842 N.E.2d at 341. Because this is the only evidence presented at trial pertaining to Officer Blackburn's degree of concern, suspicion or knowledge, this factor favors Woolston.

[23] The degree of intrusion of Officer Blackburn's conduct on Woolston's ordinary activities was minor and weighs in favor of the State. The degree of intrusion is assessed from the defendant's point of view. *Mundy*, 21 N.E.3d at 118. In *Washington*, our supreme court held an officer's question at the end of a traffic stop as to whether the defendant had any drugs or weapons on his person reasonable under the state constitution. 898 N.E.2d at 1206-07. There, the court determined the intrusion was "slight" as the officer "merely asked the defendant a brief question, one that not only asked if he had drugs, but also if he had weapons or other items that may harm the officer." *Id*. at 1206. Here, Officer Blackburn returned to Woolston's car and asked permission to continue to speak with him and Woolston agreed.

[24] As to the extent of law enforcement needs, we consider of the nature and immediacy of the governmental concern. *Masterson v. State*, 843 N.E.2d 1001, 1007 (Ind. Ct. App. 2006), *trans. denied*. In *Washington*, the court held the

officer's question "consistent with the officer's concern for his own safety and law enforcement's responsibilities to deter crime, to intercept criminal activity, and to apprehend its perpetrators." 898 N.E.2d at 1206. Balancing all of the factors, we cannot conclude Officer Blackburn's conduct was unreasonable under the totality of the circumstances.

## B. Was Woolston Entitled to a *Pirtle* Warning?

In his brief to the trial court, Woolston claimed Officer Blackburn did not obtain valid consent to search his vehicle because Officer Blackburn failed to give him *Pirtle* warnings, a conclusion we presume the trial court agreed with. *See Washington*, 898 N.E.2d at 1203. The State contends Woolston was not in custody when he consented to the search and therefore, was not entitled to a *Pirtle* warning. Our supreme court has held that a person in police custody asked to give consent to a search is entitled to the presence and advice of counsel prior to making the decision whether to provide consent. *Pirtle v. State*, 263 Ind. 16, 29, 323 N.E.2d 634, 640 (1975). In determining whether a person is in custody, the "ultimate inquiry is whether there was a formal arrest or a restraint on freedom of movement of the degree associated with a formal arrest." *Janes*, 102 N.E.3d at 318. Courts consider a variety of factors to determine whether an encounter is custodial, including whether a reasonable person would feel free to leave, *id.*, and we examine the circumstances for "objectively overpowering, coercive, or restraining police behavior" that suggest a formal arrest, *Meredith v. State*, 906 N.E.2d 867, 873 (Ind. 2009). Although a

person is seized and temporarily not free to leave during an investigatory stop, he or she is not ordinarily considered to be in custody. *Id*.

> A non-exhaustive list of relevant factors our cases have identified includes: whether the defendant was read his *Miranda* rights, handcuffed, restrained in any way, or told that he was a suspect in a crime; how vigorous was the law enforcement interrogation; whether police suggested the defendant should cooperate, implied adverse consequences for noncooperation, or suggested that the defendant was not free to go about his business; and the length of the detention.

*Id*. at 874 (internal citations omitted).

[26] The State argues "nothing about the circumstances suggest that [Woolston] was in custody" as he remained in his vehicle before consenting and Officer Blackburn spoke in a normal tone of voice, did not draw his weapon, or physically restrain Woolston. Br. of Appellant at 12. On the other hand, Woolston maintains that "[a] reasonable person, pulled over by two officers while one is standing at the driver's door, and police lights are engaged, would not have any expectation that they could just leave the scene freely without consequence, including criminal charges for fleeing law enforcement." Br. of Appellee at 11.

[27] Viewed most favorably to the trial court's decision, the record reveals that Woolston was pulled over at night, the patrol vehicle was positioned directly behind Woolston's vehicle with its lights flashing, and two uniformed officers were on the scene. Officer Blackburn stood at the driver's window while the

other officer stood behind him or nearby as he asked Woolston about contraband and requested consent to search his car. Woolston testified that when Officer Blackburn walked back up to his window he did not feel free to drive away because the "[l]ights were on and [Officer Blackburn] was standing there." Tr., Vol. 1 at 28. At that point, Woolston did not feel free to refuse to speak with Officer Blackburn and answer his questions. However, there is no evidence in the record of any of the above listed factors suggesting Woolston was in custody. To the extent the trial court granted the motion to suppress due to a *Pirtle* violation, we cannot say there is substantial evidence of "objectively overpowering, coercive, or restraining police behavior" suggesting Woolston was under formal arrest requiring *Pirtle* warnings. *Meredith*, 906 N.E.2d at 873.

## IV. Voluntary Consent

[28] Finally, the State argues Woolston's consent to search was voluntary. Under the Fourth Amendment and the Indiana Constitution, the State bears the burden of proving consent was "voluntarily given, and not the result of duress or coercion, express or implied." *McIlquham*, 10 N.E.3d at 511. Voluntariness is a question of fact to be determined from the totality of the circumstances and consent is valid unless "procured by fraud, duress, fear, or intimidation or where it is merely a submission to the supremacy of the law." *Id.*

[29] In its brief to the trial court, the State outlined eight factors considered in determining whether a defendant's consent is voluntary under the totality of the circumstances:

whether the defendant was advised of Miranda rights prior to the search, the defendant's degree of education and intelligence, whether the defendant was advised of his right to refuse consent, whether the defendant has previous encounters with law enforcement, whether the officer made any express or implied claims of authority to search without consent, whether the officer was engaged in any illegal action prior to the request, whether the defendant was cooperative previously and  whether the officer was deceptive as to his true identity or the purpose of the search.

Appellant's App., Vol. 2 at 46 (citing *Navarro v. State*, 855 N.E.2d 671, 677 (Ind. Ct. App. 2006)).

[30]  Arguing only two factors favored Woolston, that he was not given *Miranda* warnings or told he had the right to refuse, the State maintained that the remaining factors were in its favor except that there was no evidence as to whether Woolston had any prior encounters with law enforcement.  *See* Appellant's App., Vol. 2 at 46.  Under the totality of the circumstances, there is no substantial evidence of probative value demonstrating Woolston's consent to search was obtained by fraud, duress, fear, or intimidation, or a submission to the law.  We agree with the State.

# Conclusion

[31]  For the foregoing reasons above, we reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

[32]  Reversed and remanded.

May, J., concurs.

Baker, J., dissents with opinion.

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| State of Indiana, | Court of Appeals Case No. |
| *Appellant-Plaintiff,* | 18A-CR-1091 |
| v. | |
| Dylan S. Woolston, | |
| *Appellee-Defendant.* | |

**Baker, Judge, dissenting.**

[33]     I respectfully dissent because I do not believe that a reasonable person in Woolston's shoes would have believed he or she could disregard the police presence and go about his or her business. Officer Blackburn issued the warning and, after taking a few steps toward his police vehicle, turned around and prolonged their encounter. The officer did not tell Woolston he was free to leave after issuing the warning. And Officer Blackburn did not return to his

marked vehicle—which held a second officer and continued to flash its police lights—after issuing the warning but instead turned around to continue the conversation with Woolston. I simply do not believe it credible that an average citizen, under these circumstances, would feel free to leave.[5] Consequently, I believe that the trial court properly granted Woolston's motion to suppress because the search of the vehicle violated the Fourth Amendment to the United States Constitution.

---

[5] I also share the majority's concern that if Woolston had refused Officer Blackburn's request to search his vehicle, the officer would have believed he had reasonable suspicion to continue the encounter.